■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JOHN MILLER, Appellant.—Judgments of conviction, Supreme Court, Bronx County, rendered February 13, 1974, after jury trial (relating to sale of April 13, 1972) and upon plea of guilty (sale of April 7, 1972), affirmed.* Defendant was indicted separately for each of two drug sales to one

---

* Though no points are raised respecting the conviction by plea of guilty during jury deliberations, defendant's notice of appeal, filed *pro se,* appeals indiscriminately "from the judgment of conviction rendered against him in this Court on the 13th day of February, 1974". The conviction by plea is affirmed without further comment.

Caggiano, an undercover police officer. The indictment disposed of by trial related, as has been noted, to a sale on April 13, 1972, and that disposed of by plea to one on April 7, 1972. "The crucial issue [so stated in defendant-appellant's brief] was the credibility of the Millers [defendant and his wife] vis-à-vis the police and Willie Williams [the informer]." The latter statement is accurate and, as might have been expected, the strategy of the defense consisted of a sustained attack on Caggiano's credibility, mostly directed to collateral matters. There are several difficulties with such a strategy; one is, that by its very nature, it results in importation into a trial of irrelevancies and near-irrelevancies, the countering of which by what in other circumstances would also be irrelevant produces a trial record which might arguably be made to appear unfair. But there is also another difficulty—this from the point of view of a defendant—that, if the strategy does not produce favorable results, its very irrelevance to the issue of guilt or innocence boomerangs against the side which employs it. The "prejudicial errors committed at the trial" as set forth in the dissent are virtually all the result of manifestations of this strategy—which did boomerang. Another aspect of this type of strategy is that it may also involve the use of bold tactical ploys. One such ploy involved a patently unfair, though in the circumstances, harmless, effort by the prosecutor to evoke before the jury an answer by Williams involving defendant in a completely unrelated heroin transaction. Assuming that the prosecutor deliberately elicited from Williams the response that the source of the heroin possessed by him in an unrelated case, for which he was then serving a sentence, was the defendant, and assuming further that a mistrial should have been declared because of prejudice flowing therefrom, defense counsel deliberately chose—he so stated—that he would not request a mistrial. He gambled on the fact that the court, in striking the answer and sustaining the objection, gave an instruction to the jury on the point. One who does so cannot be heard to complain if he guessed wrong. The mistrial would have been there for the asking and counsel who eschewed it cannot now be heard to complain. In any event, there is no "significant probability" that this episode contributed to the verdict. *(People v Crimmins,* 36 NY2d 230, 242.) The main thrust of the attack on Caggiano's credibility consisted in an accusation that he had framed defendant, with Williams' assistance, to cover up his alleged theft of purchase money, supplied by the police department to buy drugs, by the device of overstating the amount expended. Involved in this accusation was his earlier refusal to testify before a Grand Jury, later withdrawn and followed by appearance and testimony after transfer to another police command. Much is made of this. However, he did explain the entire circumstances at the trial in a manner which, if accepted—and it was—by the jury, would thoroughly account for the refusal to testify. Further, it is charged that there was an improper bolstering of that explanatory testimony by permitting his new commander, Sergeant Durk, to testify as to these circumstances. According to defendant, it somehow becomes an unfair prosecutorial act to call as a witness a person "who has gained a reputation for fighting police corruption," though how this is so is not explained. The propriety of eliciting evidence both from Caggiano and Durk should not be questioned because explanatory testimony was appropriate to the moment. The inference was being nurtured by the defense that Caggiano was himself a criminal, seeking to avoid a departmental trial, and extrinsic (read "ordinarily irrelevant") evidence was proper to negate this inference. (See *People v McDowell,* 9 NY2d 12.) Defense counsel, in his opening, promised to call certain witnesses and did not do so. It was not an improper act on

the prosecutor's part to call attention to their not having been called. Particularly is this so as to the woman with whom defendant was allegedly "engaged in an extra-marital affair when the sale assertedly occurred." And it should also be noted that the alibi spoken of is for the time concerned in the charge to which defendant pleaded guilty. It is claimed to have been error for the District Attorney to have failed to supply defendant's counsel with Grand Jury minutes of Caggiano's testimony for use in his cross-examination. But the testimony so given was not in relation to the instant indictments and the minutes were not in the courtroom, being under the control of the special prosecutor and the Justice presiding in the Extraordinary Term. Nor was there any basis for belief that the District Attorney should have anticipated in advance that they might be required so that he might have initiated proceedings to have them made available. It is not appropriate to equate Grand Jury minutes in another case with those in the case on trial, and to subject those minutes to the same requirement of ready availability. In sum, the errors, such as they were, are patently insufficient to overcome the overwhelming evidence against defendant. Concur—Markewich, Kupferman and Lupiano, JJ.; Stevens, P. J., and Murphy, J., dissent in the following memorandum by Murphy, J.: Murphy, J. (dissenting). I would reverse and grant defendant a new trial because of several prejudicial errors committed at the trial. In separate indictments consolidated for trial, defendant was charged with possession and sale of a dangerous drug on April 7 and 13, 1972. A first trial terminated in jury disagreement. On his second trial, defendant was convicted of the charges relating to April 13. While the jury was still deliberating his fate on the April 7 charges, he pleaded guilty to criminal possession of a dangerous drug in the fourth degree. The People contend that defendant sold drugs to an undercover officer after they were introduced to each other by an informer named Willie Williams. Defendant, who has no prior convictions but admitted to involvement in illegal gambling operations, denied the charges and interposed an alibi defense to the April 7 transaction. Specifically, he claims to have been in Florida when the initial introduction allegedly took place and engaged in an extramarital affair when the sale assertedly occurred. During the direct examination of the informant, Williams, the prosecutor elicited the fact that the witness was then serving a prison sentence for having possessed heroin in November, 1971, a date in no way related to the crimes for which appellant was on trial. Williams was then asked: "Where did you get that heroin from, heroin that you were in possession of in 1971?" A. "I got it from John." Study of the record discloses that the solicitation of such prejudicial response was deliberate on the part of the prosecutor. Defense counsel immediately objected. After a bench conference, at which defense counsel revealed that he would not "ask for a mistrial at this point", the Trial Justice decided to sustain the objection and give a curative instruction; and he did. The failure of defense counsel to press for a mistrial, though disturbing, cannot, in my view, support the complete disregard of this patently prejudicial testimony intentionally elicited by the prosecutor. Nor can the fact that Williams' testimony related to the April 7 transaction (to which defendant entered a plea after his conviction) redound to respondent's benefit. Williams was a prime link in the prosecutorial chain of evidence. Defendant testified in his own behalf and denied any involvement with drugs. Williams refuted, in a concededly improper fashion, such assertion. His highly prejudicial testimony cannot be considered moot by the circumstance that defendant, already convicted by the jury of a Class B felony, elected to plead guilty to a Class D felony. In addition to his reliance on an

alibi defense to the April 7 transaction, defendant contended at the trial that he was being framed by Officer Caggiano (who was involved in both incidents as the purchaser). Appellant sought to establish, through cross-examination of such witness, that Caggiano pretended to participate in drug deals with him in order to pocket the money provided by the police department for undercover purchases. In such connection it was brought out, *inter alia,* that Caggiano: had been previously accused of purchasing a far lesser amount of drugs than he claimed; had initially refused to testify before a Grand Jury investigating such allegations without receiving immunity, but after being transferred to Sergeant David Durk's unit, had agreed to testify before the Grand Jury without immunity; and had requested $13,000 for the April 13 "buy" on April 10, although he had positively stated on the first trial that he first discussed a second sale, for $13,000, with defendant on April 11. To counter this testimony, the People were permitted to ask Caggiano about his Grand Jury testimony (without providing a copy thereof to defense counsel) and to call Sergeant Durk (who has gained a reputation for fighting police corruption) to rehabilitate Caggiano's credibility. Such testimony, in my opinion, constituted impermissible bolstering on a collateral issue and should not have been received. (Cf. *People v Schwartzman,* 24 NY2d 241.) Finally, the prosecutor, in summation, improperly referred several times, over repeated objections, to defendant's failure to call witnesses, particularly the girl he claimed he was with on one critical evening. *(People v Mirenda,* 23 NY2d 439; *People v Cwikla,* 45 AD2d 584; *People v Ingram,* 49 AD2d 865.) In light of the above errors, which cannot be deemed harmless in their cumulative effect, the judgment of conviction should be reversed and a new trial directed.