■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v MAURICE PATTERSON, Appellant. — Appeal from a judgment of the County Court of Albany County (Harris, J.), rendered October 24, 1980, upon a verdict convicting defendant of the crime of sexual abuse in the first degree. On December 6, 1979, defendant was indicted on two counts of sexual abuse in the first degree following an incident on June 24, 1979 on Jay Street in the City of Albany. The facts are essentially undisputed. On October 25, 1979, at about 1:30 A.M., Albany police officers investigated a complaint from a female resident in the Pine Hills section of the city that someone had left an obscene note under her door and had looked through her window. Shortly thereafter, the officers saw defendant walking on a nearby street. He matched the description. He gave permission to search his parked vehicle, in which the police found a note pad matching the paper upon which the obscene note was written. Defendant voluntarily accompanied the officers to the station where he was read his *Miranda* rights and admitted writing the subject note as well as a second note. He was charged with the crime of aggravated harassment and the violation of harassment. During the questioning, defendant admitted several sexual attacks on women in the city, including an attack on Jay Street on June 24, 1979. This admission was made within one hour of the arrest based on the second obscene note. Lauren Smith, the complaining witness in the Jay Street incident, identified defendant from a photograph of a lineup. Defendant's motion to suppress his oral confession was denied after a hearing. At trial, Miss Smith testified that she was attacked at about 3:30 A.M. on June 24, 1979, when a man approached her from behind and knocked her to the ground. She identified this man as Maurice Patterson. Defendant was convicted of sexual abuse in the first degree and was sentenced to a term of imprisonment of from three and one-half to seven years. This appeal ensued. Defendant's initial argument that his statement was involuntary is without merit. The People have the burden of proving beyond a reasonable doubt the voluntariness of a statement (*People v Valerius,* 31 NY2d 51, 55). In his brief, defendant concedes that he received timely and adequate admonitions of his *Miranda* rights, but contends that the duration and circumstances of the police interrogation rendered his statements involuntary. Examination of the "totality of the circumstances" confirms that the interrogation was neither of improvident length, nor marred by physical or mental coercion (cf. *People v Anderson,* 42 NY2d 35 [19 hours of continuous police interrogation]). To the contrary, the questioning here was interrupted, defendant had access to a phone and was accorded food and his basic human needs. On this record, we cannot say that the court erred in finding that the People had sustained their heavy burden of proof (see *People v Jones,* 85 AD2d 50, 54-55). Nor do we find error in the trial court's ruling on defendant's *Sandoval* motion. Admission of evidence of prior crimes or "bad acts" which reflect upon a defendant's credibility presents a matter for the trial court's discretion (*People v Pollock,* 50 NY2d 547; *People v Sandoval,* 34 NY2d 371). Here, the court ruled that defendant could be cross-examined as to 18 alleged "bad acts" (all theft related) dating back to 1963, and a 1967 conviction for third degree burglary, but precluded inquiry into the underlying basis of a 1980 conviction for first degree rape. Defendant's

argument that the subject acts were remote and not the product of "calculated violence" is unpersuasive. Review of the record demonstrates that the court properly balanced the probative value of the impeaching material against the potential for undue prejudice (*People v Sandoval, supra*). Since defendant has not met his burden of demonstrating the contrary, we decline to disturb the court's exercise of discretion (*People v Stroman,* 83 AD2d 370, 373-374). Next, defendant contends there was reversible error when the court permitted Miss Smith to testify on redirect examination as to a pretrial photographic identification of him. Generally, a witness may not testify to an extrajudicial identification of a photograph of the defendant (*People v Griffin,* 29 NY2d 91). Exceptions exist, however, where the defense creates a false inference on cross-examination relative to the identification issue (see *People v Baker,* 23 NY2d 307, 323), such as a claim of recent fabrication, or where defense counsel has "opened the door" by reading part of a prior statement. Here, defense counsel sought to highlight an apparent inconsistency, not assert a recent fabrication. The lineup photograph was introduced into evidence, and the witness was allowed to confirm the photographic identification. Defense counsel, in the first instance, raised the spectre of an otherwise prohibited photographic identification for the intended purpose of raising an inference that Miss Smith had failed to identify defendant's photograph from a series of mug shots viewed on the date of the assault. Since there was no showing that defendant's photograph was among the mug shots viewed, the trial court properly determined the inference was improper. In effect, Miss Smith's testimony was designed solely for the purpose of explanation, not to bolster her identification. The record confirms an independent basis for identification. As such, if any prejudice occurred, it was harmless. We do not find that the conduct of the prosecutor during summation was so egregious as to deny defendant his constitutional right to a fair trial, nor rose to the level of misconduct requiring reversal and a new trial. Defendant's reliance upon *People v Mirenda* (23 NY2d 439) is misplaced in the absence of any direct or indirect references to his failure to have testified and failure to produce witnesses or evidence. While certain of the remarks made by the prosecutor might better have been left unsaid, his comments, when taken in view of the overwhelming evidence of guilt, can be found to have been rendered harmless by the weight and nature of such other proof (see *People v Crimmins,* 36 NY2d 230). The prosecutor neither called, nor referred to defendant in disparaging terms. When viewed in the light of the entire testimony (*People v Brown,* 77 AD2d 841), they do not appear so improper as to require reversal. The rule is that improper summation should be assessed for its prejudicial effect (*People v Brosnan,* 32 NY2d 254, 262). The instructions by the trial court were adequate to place the respective burdens of the prosecution and the defendant within proper context. Defendant neither moved for a mistrial nor made exception to the charge. An order for a new trial is properly shunned when the misconduct has not substantially prejudiced a defendant's trial (*People v Galloway,* 54 NY2d 396). We find that the prejudice, if any, was insufficient to require a new trial. Finally, the sentence imposed was within the statutory limit (Penal Law, § 70.06, subd 3, par [d]; subd 4, par [b]) and in view of the violent nature of the offense, does not constitute an abuse of the sentencing court's discretion (*People v Downs,* 77 AD2d 740, mot for lv to app den 51 NY2d 773). Judgment affirmed. Main, J. P., Casey, Yesawich, Jr., and Weiss, JJ., concur.

Levine, J., dissents and votes to reverse in the following memorandum. Levine, J. (dissenting). The record discloses that the prosecution's case against this defendant rested almost entirely on the eyewitness identification by the victim from her momentary encounter with her assailant at 3:45 A.M. on June

24, 1979, when the crime was committed, plus the oral admission by defendant to the police on October 25, 1979, four months later. Defendant produced no witnesses and did not himself testify. At the *Sandoval* hearing, the court ruled that defendant would be subject to cross-examination on "bad acts", not convictions, concerning a series of alleged burglaries in 1963, when he was a young teeenager, and another series of "bad acts" in 1967, while he was still a teenager, plus a 1967 conviction. In my view, the remoteness of the acts, the age of defendant at the time they were committed, and the substantial gaps in time when there were no such acts, made their probative value on defendant's credibility slight, compared to the possible prejudice from their inflamatory cumulative effect upon the jury. Moreover, the ruling took on additional significance because of other, more serious errors committed at the trial. Since defendant did not testify, the defense to this case consisted of casting doubts, through cross-examination of prosecution witnesses and in summation, on the accuracy of the victim's identification (not on the basis that she lied, but on her opportunity to observe at the time of the offense and the accuracy of her recollection with the four-month gap between the incident and defendant's arrest), and on the credibility of the testimony of the police as to defendant's admission and its voluntariness. There was little else that defense counsel could do. In general, his summation was fair comment on the evidence, and when it went beyond proper bounds, the prosecutor's objections were sustained. During the prosecutor's summation, however, he was permitted to comment in no less than 10 separate instances on the lack of defense evidence concerning these issues. The following comments are particularly noteworthy, in each instance relating to the validity of defendant's admission to the police: "Mr. Der Ohannesian: They could have been asked that question and there was a lot less demeaning questions that he put forward to them but no, *they had something to hide*. [Emphasis added.] That's typical of the defense. They ask questions. There's no proof, there's no testimony. There's no proof. There's no testimony that this defendant was beaten but there was a suggestion. Ask yourselves *is it fair to just ask questions?* What does the proof show? [Emphasis added.] Ask yourselves what the proof showed and the *unrebutted evidence, unrebutted testimony,* showed. * * * I'm going to ask you to come back with a verdict that you can tell Lauren Smith and every other member of this county you feel is justified, and I think that the only verdict that you can come back with in this case is guilty. [Emphasis added.]" Since the only possible defense witness to controvert the testimony of the police on the incriminating admission was defendant himself, these remarks are referable to nothing other than defendant's failure to testify, an error of constitutional dimension (*People v Crimmins*, 36 NY2d 230, 237; *People v Mirenda*, 23 NY2d 439, 457; *People v King*, 73 AD2d 895, 896). Contrary to the majority's view, the evidence of guilt in this case can hardly be characterized as overwhelming, based entirely on the victim's identification during the brief, early morning confrontation and upon an alleged oral admission. The prejudicial effect of the prosecution's commments on defendant's failure to testify was further compounded by the court's *Sandoval* ruling, which effectively prevented any possibility of defendant's taking the stand. The prosecutor's improper remarks were not provoked by any conduct on the part of the defense, and were not cured either by the court's sustaining defendant's objections or by appropriate instructions in the charge to the jury. Indeed, the court never charged that defendant had no duty to introduce evidence. Particularly because the proof of defendant's oral admission was so critical to the prosecution's case here, it clearly may not be said that there is no reasonable possibility that the comments on defendant's failure to testify concerning the validity of that admission did not contribute to defendant's conviction. Therefore, the majority's reliance upon *People v Crim-*

*mins (supra)* is misplaced, and the judgment should be reversed and a new trial ordered.