■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JOHN DE LO SANTOS, Appellant. — Appeal by defendant from a judgment of the Supreme Court, Kings County (Ryan, J.), rendered November 20, 1981, convicting him of criminal sale of a controlled substance in the second degree, upon a jury verdict, and imposing sentence. Judgment reversed, on the law, and new trial ordered. The People's chief evidence against defendant was the testimony of an undercover police officer who allegedly purchased cocaine from defendant and two codefendants on May 9, 1980 in defendant's dining room in the presence of two other unidentified males. The officer's hidden tape recorder, however, had run out of tape after he met with defendant but before the transaction occurred. Furthermore, his written report misdescribed defendant, who was 50 years of age at the time of his trial in September, 1981, five feet three inches tall, and 135 pounds, as 38 to 45 years of age, five feet nine inches tall, and 160 pounds. The officer denied that his simulation during the transaction of cocaine and marihuana use had affected him; he admitted, however, that his simulation of marihuana use required him to hold marihuana smoke in his mouth for a period before exhaling. Furthermore, he admitted that after he left defendant's apartment, he became lost and his backup team "finally found [him] some place in Brooklyn". In addition, the officer testified that some of the conversation during the transaction was in Spanish, which he did not understand. In fact, the officer had been unaware of defendant's existence until he was introduced to him immediately preceding the transaction as the codefendants' "connection". Up to that point, the officer had dealt only with the codefendants. There was no reference to defendant on any of his tape recordings of conversations prior to the transaction, and he never spoke to defendant after the transaction. The officer nevertheless identified defendant in court. Defendant took the stand, but his codefendants did not. In denying his guilt, defendant testified that he had arrived home on the evening in question and found codefendant Felix Maldonado, who was related to him, visiting there with some friends. The officer approached defendant and introduced himself with his undercover name. Defendant thought he appeared drunk and smelled marihuana in the dining room. On summation, defendant's theory was that, although the undercover officer may have purchased cocaine on the premises at the time in question, the officer was so affected by his purported simulation of drug use as to be unable to know with whom he had dealt. In their summation, the People expressly referred to two taped conversations, as "absolute verification of what happened on May 9th, so you don't need the tape of the actual transaction". The first tape was the officer's conversation with codefendant Steven McCoy on May 27, 1980, and the second was of the officer's conversation with codefendant Maldonado on June 23, 1980. Both had been admitted in evidence over defendant's objection that their admission violated the rule laid down by the Supreme Court in *Bruton v United States* (391 US 123). The first conversation included the following: "U/C [undercover officer]: What was I gonna say, oh! the *last* package — dynamite. Steve [McCoy]: I know. U/C: Tell *John* that man is on the money okay. Steve: Yea. U/C: That man *John* did not bullshit me he said where it was at. Felix [Maldonado] did too you know. Steve: He didn't touch [adulterate] it man. U/C: It was beautiful" (emphasis supplied). The second conversation included the following: "Felix: Hold it so, what you're trying to tell me, is that you'd rather have *John's* because you already know how it's like, right? U/C: No, what I'm telling you is, what are you telling me is this stuff gonna be better? Felix: Hey it's suppose to be just as good as *Johnny's*" (emphasis supplied). In their brief, the People

argue that these references to "John" did not expressly inculpate defendant. This was not their position at trial, however. In introducing the tapes in evidence, and in their summation, the People's position was that the references were to defendant's criminal involvement in the May 9, 1980 transaction. Furthermore, the officer testified that the reference to "John" in the taped conversation meant defendant. Clearly, the People considered these tapes admissions by the codefendants of their participation in the May 9, 1980 transaction, and just as clearly the People used these admissions to inculpate defendant who was precluded from cross-examining the codefendants about their conversations with the officer because they had refused to take the stand. This was a violation of the *Bruton* rule. Since none of the exceptions to that rule appear to be applicable on this record (see, e.g., *People v McNeil,* 24 NY2d 550), and inasmuch as the admission and use of the taped conversations cannot be deemed harmless error in the circumstances of this case (see *People v Mirenda,* 23 NY2d 439, 455-456), the judgment must be reversed and a new trial ordered. Lazer, J. P., Gibbons, O'Connor and Weinstein, JJ., concur.