OPINION OF THE COURT
Alexander, J.
When the circumstantial evidence in this case is viewed in a light most favorable to the prosecution, as we are required to do on this appeal (People v Kennedy, 47 NY2d 196; People v Benzinger, 36 NY2d 29, 32), and the prosecution is given the benefit of every reasonable inference to be drawn therefrom (People v Lewis, 64 NY2d 1111, 1112, People v Way, 59 NY2d 361, 365; People v Montanez, 41 NY2d 53, 57), the facts from which the inference of defendant’s guilt is drawn, when perceived as a whole, overwhelmingly establish his guilt beyond a reasonable doubt, are inconsistent with his innocence and exclude to a moral certainty every other reasonable hypothesis (see, People v Lewis, supra; People v Way, supra; People v Barnes, 50 NY2d 375, 380; People v Montanez, supra; People v Benzinger, supra). Although the prosecutor’s comments during summation went beyond the limits of propriety, in light of the overwhelming evidence of guilt, we hold that this error is harmless and that defendant was not deprived of a fair trial thereby (see, People v Crimmins, 36 NY2d 230; People v Brosnan, 32 NY2d 254; People v Roopchand, 65 NY2d 837). Consequently, the order of the Appellate Division should be reversed and the case remitted to that court for consideration of the facts and issues not reached.
*257 Defendant and codefendant Kevin Postell* were indicted on various charges of rape, sodomy, sexual abuse and burglary arising from an incident that occurred on December 8, 1981, when the complainant was attacked in her apartment which she shared with her boyfriend in Mountaindale, New York. At approximately 6:30 p.m. on that date, when she opened the apartment door in response to a knock, two men wearing stocking masks pushed their way in, pressed a knife against her neck and proceeded to rape her and sodomize her. She reported that after the assailants left, a half ounce of marihuana and a purple pouch containing collector’s coins were missing from the apartment.
Approximately 20 minutes prior to the attack, the complainant had received a telephone call from defendant, whom she knew through her boyfriend. Defendant asked to speak to the boyfriend about a possible purchase of marihuana. Complainant recognized defendant’s voice from prior conversations, and advised him that her boyfriend was not at home.
There were no lights on in the apartment during the attack, but complainant was able to describe her attackers by their contrasting height and build. She described them as a big one, who was tall and stocky, and a smaller one, who was shorter and had a slim frame. Theáe descriptions fairly reflected the relative sizes and builds of defendant Morgan and his codefendant. (Defendant fits the description of the "smaller one”.) Complainant was able to determine accurately that her attackers were black. She also testified that while being violated by Postell, she heard defendant rummaging through the apartment, and at one point he demanded to know where the marihuana was kept. She was not able to identify defendant by his voice, however, because the "smaller one” spoke in an unnaturally deep voice, apparently in an attempt to disguise it.
Defendant and Postell were placed at the complainant’s building by two witnesses at approximately the time the attack occurred. Arthur Serrano testified that he observed them enter complainant’s building between 6:30 and 7:00 p.m. and that no one else either entered or exited the building during that period of time. Julia Ann Colon identified the *258 codefendants as the two she saw walking down the alley in the direction of complainant’s building between 6:00 and 7:00 p.m., and whom she observed return from that direction a short time later, enter a gray automobile and drive off.
Walter Williams testified that defendant and Postell came to his home between 5:30 and 6:00 p.m. to use his telephone but left because his phone was out of order. While there, however, he overheard them discussing their desire to "rip something off”. Defendant and Postell came back to Williams’ house approximately one-half hour later and asked Williams to give them a ride out of town, which he did in his gray Cadillac. Williams noticed that Postell was carrying a purple pouch.
A week or so later, Williams again gave defendant a ride, and was told by defendant that defendant had not been involved in the rape, and that Postell was entirely to be blamed. However, they then picked up Postell, who was hitchhiking, and Williams overheard the codefendants discussing how they could exculpate themselves.
The jury also heard testimony from Penny Troy that on December 13, defendant had bragged to her about having had a sexual experience with a white girl in Mountaindale. She testified further that Postell, on the same occasion, admitted that he had raped a girl in Mountaindale.
Defendant was interviewed by Detective Robert Robinson of the Fallsburg Police Department on December 14, 1981, and although he was not placed under arrest at that time, he was given Miranda warnings. Detective Robinson advised defendant that he and Postell were suspects, but that he was not obligated to speak to the police and was free to leave the station house at any time. Nonetheless, defendant consented to an interview which was tape recorded. The tape was received into evidence at the trial. During the interview, defendant admitted that he and Postell were in Mountaindale at the time of the rape, and that he had spoken to the complainant during the second of three telephone calls that he made to her apartment. He also admitted to having knocked on complainant’s door while Postell waited in the hallway, but contended that his knock went unanswered. He denied having "done anything” and in an apparent effort to exculpate himself and divert suspicion, he questioned the complainant’s ability to identify her assailants, observing that *259 she knew him and should have been able to recognize his voice.
Despite the overwhelming evidence of defendant’s guilt, the Appellate Division, relying on People v Conyers (52 NY2d 454) and People v Bailey (58 NY2d 272), reversed the conviction based on the prosecutor’s tactic, during summation, of contrasting defendant’s quiet and soft spoken demeanor in the face of an accusation of having committed rape, sodomy and a burglary, with the way in which the prosecutor would have reacted in like circumstances, stating that: "If someone is going to talk to me about being a suspect in a rape and I wasn’t in Mountaindale and I was this and that, you would have to hold me down. I would have been pounding the tables, swinging from the ceiling. I would have been doing everything to tell you it wasn’t me.” The prosecutor’s characterization was made in response to defense counsel’s prior assertion that defendant had told the jury, "through Detective Robinson that, in fact, he hadn’t [committed any oifense].”
While we agree with the Appellate Division that the prosecutor’s statement of his personal view as to what he would have done in like circumstances was improper, we note that the comments were in response to defense counsel’s summation, and were not actually an attempt to impeach defendant through reference to his postarrest silence as was the case in People v Conyers (52 NY2d 454, supra). Rather, the remarks related to the content and manner of the voluntary statements made by defendant during his interview with the police. Moreover, although the prosecutor used himself as an example of contrasting conduct, that use did not rise to the level of transforming the prosecutor into an unsworn witness (see, People v Bailey, 58 NY2d 272, supra). We conclude, therefore, that in the context of the entire summation and the overwhelming evidence of guilt, the prosecutor’s comments were harmless error (People v Crimmins, 36 NY2d 230, supra) and did not deprive defendant of a fair trial (People v Hopkins, 58 NY2d 1079; People v Galloway, 54 NY2d 396).
Chief Judge Wachtler and Judges Jasen, Meyer, Simons, Kaye and Titone concur.
Order reversed and case remitted to the Appellate Division, Third Department, for further proceedings in accordance with the opinion herein.

 Both defendants were initially tried together, but the jury was unable to reach a verdict as to Michael Morgan, while it convicted the codefendant on all counts. This appeal is from the judgment of conviction rendered upon defendant’s retrial.