(March 6, 1986)

■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v VICTOR BALLS, Appellant.—Appeal from a judgment of the County Court of Albany County (Harris, J.), rendered November 21, 1983, upon a verdict convicting defendant of the crime of criminally negligent homicide.

On August 17, 1983, defendant was charged in a one-count indictment with manslaughter in the second degree as the result of the death of his seven-week-old daughter. At trial,

the People introduced defendant's sworn statement into evidence in which he outlined the following pertinent events. On August 13, 1983, after returning home from work at about 5:00 A.M., defendant engaged in an argument with his girlfriend, Tammy Decker, the infant's mother. Thereafter, the infant awakened and defendant proceeded to feed and play with her. After Decker left for work at 7:30 A.M., defendant, who was now alone with the infant, played with her while lying on his bed. During this period, the infant "bumped her forehead against [defendant's] forehead, slightly hard, about two or three times". The infant also struck the back of her head on the inside area of defendant's knees several times. Despite the fact that the infant was crying throughout this period, defendant laid her on the bed and "pushed the mattress around her, hard enough to bounce her up and down". Defendant put the infant to sleep at about 9:00 A.M., and he went to sleep himself until 12:30 P.M. At that point, the infant felt cold and defendant could not awaken her. He then walked to his parents' home, where he asked his sister to call the police. The responding officer testified that the call was received at approximately 1:30 P.M. No other direct testimony was presented as to what transpired during this period, except for Decker's testimony confirming defendant's version of the events before she left for work. Emergency assistance failed to resuscitate the infant, who, according to the medical testimony, had sustained a fractured skull. Defendant was convicted of the lesser included offense of criminally negligent homicide and sentenced to an indeterminate term of imprisonment of 1⅓ to 4 years. This appeal ensued.

The principal issue before us is whether the prosecutor's comments during summation were so egregious as to have deprived defendant of a fair trial. Initially, we note that while defendant registered only one specific objection during the summation, his postsummation request for a mistrial on the basis of the prosecutor's conduct was sufficient to preserve his objections for appellate review (see, People v Bailey, 58 NY2d 272, 275; People v Medina, 53 NY2d 951, 953). While defendant points to several objectionable comments made during the prosecutor's summation, only one warrants extended discussion. Specifically, the challenged comment concerned defendant's conduct while the rescue workers were attempting to save the infant. The prosecutor stated that "[defendant] wasn't hysterical, he wasn't asking the paramedics 'What happened to my baby? What happened? Why isn't my baby breathing?' Because he caused the death."

Defendant maintains that this reference to his prearrest silence constitutes reversible error. We disagree. In this State, a defendant's pretrial silence may not be used for impeachment purposes *(People v Conyers,* 52 NY2d 454). In determining the propriety of these comments, it is significant that during summation, defense counsel characterized defendant as "staring blankly at a wall" and unable to respond during the rescue attempt, i.e., in a condition of shock. As such, the prosecutor's comments may be considered a response "in kind" *(see, People v Wood,* 66 NY2d 374, 380; *People v Morgan,* 66 NY2d 255, 259; *People v Patterson,* 83 AD2d 691, 692). More important, the comments were not so much an attempt to impeach defendant, who did not testify, by referring to his pretrial silence as in *People v Conyers* (52 NY2d 454, *supra),* but more of a behavioral characterization akin to that made in *People v Morgan (supra),* which the Court of Appeals ultimately deemed harmless in nature. We reach the same conclusion here.

Of course, we do not reach the question of harmless error unless, eliminating the error, there is overwhelming proof of guilt *(People v Crimmins,* 36 NY2d 230, 241). In addition to defendant's statement placing him in exclusive control of the infant and indicating that he may have hurt her while playing, the People's medical expert, Dr. Jack Davies, testified that the child had sustained a comminuted skull fracture and that death followed virtually immediately from a violent blow to the head. An autopsy revealed at least five areas of impact and fresh hemorrhaging. Davies further opined that the fatal impact could not have occurred prior to the day in question. Viewing the circumstantial evidence in this case in a light most favorable to the People *(People v Morgan, supra,* p 256), we find the evidence amply supports the verdict *(see, People v Kirk,* 112 AD2d 467). While several other comments attributed to the prosecution were inappropriate, we find that, in the context of the entire summation and the overwhelming evidence of guilt, these comments were harmless error and did not render the trial unfair* *(People v Morgan, supra; People v*

---

* While we agree with the dissenting opinion insofar as it deems the prosecution's mischaracterization of Dr. David Krischer's diagnosis as being beyond the bound of fair comment, the prejudicial effect of this statement should not be heightened beyond proportion. The jurors were repeatedly and clearly instructed that they were the final arbiters of the facts and that it was their recollection of the testimony that was determinative. Specifically, they were instructed to disregard any statements by counsel that failed to conform with the testimony. Consequently, we do not deem this comment as depriving defendant of a fair trial.

*Hopkins* 58 NY2d 1079; *People v Patterson,* 88 AD2d 694, 695, *affd* 59 NY2d 794; *People v Lewis,* 79 AD2d 977).

Defendant's remaining contentions of error are unavailing. The X rays taken of the infant's skull were properly received into evidence on the basis of testimony from Dr. David Krischer, the emergency room physician who attended the infant on August 13, 1985, that the X rays appeared to be those shown at the autopsy and, in combination, depicted the fracture he observed at that time *(see, Honsberger v Wilmot,* 276 App Div 884; *see generally,* Fisch, New York Evidence § 132, at 77 [2d ed]). While we agree that Detective Gregory Lever, who photographed the autopsy and testified that he observed a fracture and blood in various places on the infant's skull, was unqualified to render a medical opinion, any resulting error was not prejudicial. Cross-examination clarified that Lever was not a medical expert and Davies testified about the medical aspects of the photographs. Finally, given the tragic results of defendant's conduct, we cannot say that County Court abused its discretion by imposing the statutory maximum term of imprisonment *(see,* Penal Law § 70.00).

Judgment affirmed. Kane, Casey, Weiss and Harvey, JJ., concur.

Mahoney, P. J., dissents and votes to reverse in the following memorandum. Mahoney, P. J. (dissenting). While the majority concedes that "[t]he principal issue before us is whether the prosecutor's comments during summation were so egregious as to have deprived defendant of a fair trial", and concludes that while several comments attributed to the prosecuting attorney were inappropriate, such comments "in the context of the entire summation and the overwhelming evidence of guilt * * * were harmless error and did not render the trial unfair", it failed to identify the one comment which, when juxtaposed to the other inappropriate statements, enlarged the totality of prosecutorial error to a level that compels me to conclude that defendant was deprived of a fair trial.

Dr. David Krischer was the senior pediatric resident on call in the emergency room at Albany Medical Center when the infant was admitted to that hospital. When Krischer was unsuccessful at resuscitating the child, he pronounced her dead. At trial, Krischer testified that he believed the cause of death was sudden infant death syndrome. However, when he later observed the child after an autopsy had been performed revealing the skull fractures, Krischer testified that he de-

cided "[i]t was obviously not SID, sudden infant death". Yet, the District Attorney stated to the jury in his summation: "Dr. Krischer told you he declared it to be crib death. When he came in the autopsy and he saw these injuries he immediately changed his diagnosis: *homicide"* (emphasis supplied). Krischer never made such a diagnosis nor did he so testify. Where, as here, a defendant is on trial for the crime of manslaughter for the death of his own child, and the prosecutor falsely tells the jury that an expert medical witness diagnosed the cause of death as "homicide", the prosecutor wrongfully withdraws from the jury's consideration its duty of resolving the factual question of who and what caused the infant's demise. Such a deliberate statement, in my view, denies a defendant a fair trial. I would reverse the judgment and remit the matter for a new trial *(see, People v Wright,* 41 NY2d 172; *People v Ashwal,* 39 NY2d 105).