■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v KARL J. PAIGE, Appellant.—Kane, J. P. Appeal from a judgment of the County Court of Schenectady County (Stroebel, Jr., J.), rendered May 9, 1984, upon a verdict convicting defendant of the crimes of murder in the second degree and robbery in the first degree (two counts).

On February 2, 1983, the body of Russell Adams was discovered in Central Park in the City of Schenectady by a passing motorist. An autopsy disclosed approximately 30 knife wounds to the chest, neck and back of the victim. The cause of death was determined to be a knife wound to the heart. The time of death was estimated to be between 4:00 A.M. and 6:00 A.M. on February 2, 1983.

The ensuing investigation disclosed that the victim was last seen alive during the early morning hours of February 2, 1983 leaving Danny's Bar in the City of Schenectady, accompanied by defendant. On February 3, 1983, at approximately 1:00 A.M., investigators from the Schenectady Police Department, after learning that defendant frequented Danny's Bar, went to the bar intending to question him. After identifying defendant, they asked him to accompany them to the police station for questioning. Defendant agreed to go with them. Kevin Van Wagner, a bartender at the bar, was also asked to accompany the investigators to the police station.

After questioning both men, it was discovered that inconsistencies seemed to exist in their accounts of what had happened that night. Van Wagner claimed that he had seen defendant and the victim leave the bar and walk up the street together on the date of the crime. Defendant claimed that he walked home by way of an entirely different street and was alone. Because of this inconsistency, both men were asked to take a psychological stress evaluation (PSE) test. *Miranda* warnings were given to defendant at approximately 2:15 A.M., prior to his taking the PSE test. Because the PSE test revealed that defendant was not being truthful, he was questioned further. At approximately 4:30 A.M., defendant was informed that he was free to leave if he wished. Defendant indicated, however, that he wished to stay and resolve the matter. During the course of his interview, defendant was permitted to use the telephone, and did, rested on the floor, was given cigarettes, and provided with food and refreshment.

During the afternoon of February 3, 1983, defendant was confronted with the fact that the watch he had been wearing belonged to the victim. Although defendant at first denied this, he then began to cry and agreed to tell the police what happened. Investigators asked him if he would give a written statement and defendant agreed. Again, defendant was read his *Miranda* rights and was given an "advice of rights" form which he read, said he understood and signed. Defendant then proceeded to confess how he had robbed and murdered the victim. The written statement was then read to defendant. He also read it himself and made initialed corrections. He then signed each page. Later, at approximately 7:30 P.M., on February 3, 1983, another written statement was obtained from defendant in which he admitted that a knife shown to him was the knife he used to stab the victim.

Defendant was subsequently indicted on two counts of murder in the second degree, three counts of robbery in the first degree and one count of criminal possession of a weapon in the third degree. A suppression hearing was subsequently conducted at which it was determined that defendant's statements were voluntarily given and that he was adequately advised of his constitutional rights, both orally and in writing.

After a lengthy trial, the jury found defendant guilty of murder in the second degree (Penal Law § 125.25 [3]) and two counts of robbery in the first degree (Penal Law § 160.15 [1], [3]). Defendant was sentenced as a second felony offender to a period of imprisonment of 25 years to life on the murder

count and to 12½ to 25 years on each of the robbery convictions. The sentences were to run concurrently. This appeal ensued.

Defendant's initial contention is that his statements given to the police should have been suppressed. We have reviewed the record and agree with County Court's finding that the written statements were given voluntarily and that defendant was adequately advised of his constitutional rights prior to giving the statements at issue. Contrary to defendant's suggestion, the record establishes that despite being informed of his right to counsel, defendant never invoked this right during his questioning.

Defendant next contends that certain photographs introduced by the prosecution of the victim were of *no* probative value and were admitted *solely* to arouse the emotions of the jury and prejudice him. This contention must be rejected. The subject photographs corroborated medical evidence offered by the prosecution. Moreover, defendant contested certain issues, i.e., that the murder occurred in the park and that the knife introduced into evidence was the murder weapon. These photographs aided the prosecution in proving these issues and corroborated other evidence it offered. Therefore, it was not error to admit these photographs into evidence *(see, People v Pobliner,* 32 NY2d 356, 369-370, *cert denied* 416 US 905; *People v Millson,* 93 AD2d 899).

Defendant contends that certain remarks made by the prosecution during summation were impermissible, inflammatory and prejudicial, depriving him of a fair trial. Initially, we note that the alleged improper comments by the prosecution during summation were not properly preserved for our review since no objection was made *(see,* CPL 470.05 [2]; *People v Nuccie,* 57 NY2d 818, 819). Even if we were to review defendant's claim, we would conclude that any error in the summation was harmless *(see, People v Morgan,* 66 NY2d 255, 259; *People v Crimmins,* 36 NY2d 230).

Defendant claims that one of his robbery convictions should be vacated since the two convictions were essentially for the same act. He asserts that being convicted of both robbery counts violated his constitutional right against double jeopardy. This contention should be rejected.

The issue presented here is whether Penal Law § 160.15 (1) and (3) constitute the *same* offense under the double jeopardy clause (US Const 5th Amend). In our opinion, they do not. Penal Law § 160.15 (1) requires that the prosecution prove

that the defendant caused serious physical injury to the victim. The prosecution is not required to prove this element to convict a defendant of a violation of Penal Law § 160.15 (3). Further, Penal Law § 160.15 (3) requires the prosecution to prove that defendant used a dangerous instrument. Penal Law § 160.15 (1) does not require proof that a dangerous instrument was used. Accordingly, they do not constitute the same offenses.

Moreover, CPL 300.40 (3) appears to authorize a conviction under both subdivisions. Specifically, where a multicount indictment is involved, a trial court may submit all noninclusory concurrent counts (CPL 300.40 [3] [a]). Noninclusory concurrent counts are counts, such as the instant charges, that are not lesser or greater included offenses of each other and for which only concurrent sentences may be imposed (CPL 300.30 [3], [4]). Although a conviction may not be obtained on all *inclusory* concurrent counts (CPL 300.50 [4]), no such prohibition exists as to noninclusory concurrent counts.

Finally, a review of the record reveals that defendant's guilt was proven beyond a reasonable doubt and that defendant received a fair trial during which he was represented by competent counsel. The sentence imposed was statutorily permitted and it cannot be said that County Court abused its discretion. The sentence, therefore, should not be reduced. We have considered defendant's remaining contentions and find no reason to disturb the judgment. Accordingly, the judgment should be affirmed.

Judgment affirmed. Kane, J. P., Casey, Weiss, Levine and Harvey, JJ., concur.