■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v FERGUS QUINN, Appellant.—Judgment of the Supreme Court, New York County (Richard T. Andrias, J.), rendered on November 16, 1988, convicting defendant, following a jury trial, of murder in the second degree and sentencing him to a term of imprisonment of from 23 years to life, is unanimously affirmed.

During the early morning hours of January 21, 1983, defendant stabbed the victim, George Pereyra, multiple times during a scuffle in front of a bar. Defendant's guilt was established by circumstantial evidence. The victim had been involved in an altercation with another bar patron shortly before. This patron, a member of the Hell's Angels, was acquainted with defendant. The victim was told to leave the bar, and he departed in apparent good health. Defendant arrived at approximately the time that the victim exited. When defendant arrived, he asked the manager "what's happening, what's going on", to which the manager responded that the other patron had engaged in an altercation with the victim. The manager then observed defendant walk over to the victim on the street, pull Pereyra's coat over his head and apparently punch him several times with uppercuts with his right hand. The manager testified that it was dark outside and that he looked on from 10 to 15 feet away but saw the fight from behind defendant; defendant's back blocked much of what occurred and the manager did not notice a knife. The manager returned to the bar before the fight ended. Meanwhile, a cab driver passed by and observed two men fighting as a crowd looked on. The taxi stopped, and from 8 to 10 feet away, the driver saw Pereyra hunched over towards the ground, trying to lift his head. He observed defendant pull Pereyra's jacket over his head, holding onto it with his left hand and repeatedly punch upwards with his right hand. The driver also stated that he could not discern whether defendant held something in his hand during the fight. Seconds later, the fight having concluded, the cab driver saw defendant walk back towards the bar; Pereyra staggered over to the cab, bleeding from the mouth. The cab driver got out to help him and only then noticed blood on Pereyra's chest. The manager testified that he had been inside the bar for about a minute when defendant entered.

Patrons entering the bar within the next few moments

mentioned that they thought that somebody had been hit by a cab. The manager, glancing outside, observed Pereyra sitting beside a cab on the corner. Additionally, the patron who had fought with the victim earlier and had sustained cuts to his hand, departed at this point with two friends in a red Toyota pickup truck. The taxi driver provided a description of the occupants of the truck, who were about two feet away from him. The cab driver also testified that this patron had been standing next to defendant during the fight but was not the person doing the punching. A police officer, moreover, asserted that the cab driver had described the fight to him and related that Pereyra had flagged down the taxi, requesting to be taken home. Further, forensic evidence showed that the victim had died from multiple stab wounds, which penetrated the heart and lungs. He suffered 19 wounds to the visceral area and three slashes to his hand. The Medical Examiner testified that the victim would not have been able to walk and talk for more than a minute after the wounds had been inflicted.

Bar personnel stated that defendant had been a regular customer of the bar, sometimes patronizing it two or three times a week. After the homicide, he never returned and, indeed, defendant disappeared for the next 4½ years. In June of 1987, a detective followed up on a lead that defendant was living in Bay Ridge, Brooklyn, at a specific address, and he arranged a surveillance. On June 26th, the detective observed defendant emerge from an alley at that address, glance nervously from side to side, approach an automobile across the street, return to his building, and reemerge carrying a car seat cushion. He looked up and down the block and then placed the cushion inside the vehicle. At this point, a van pulled up, blocking the detective's view for some 20 minutes, during which time defendant disappeared. On June 30, 1987, at 8:00 A.M., the detective viewed defendant as he left the alley, peered up and down the block, walked over to the car across the street, returned to the alley, reemerged five minutes later, and then opened the trunk of the car. The detective approached defendant, identified himself, inquired as to defendant's name, and defendant responded, "Spencer Gluck". The detective asked for identification. Defendant responded that the detective should check the registration of the car. The registration on the dashboard was made out to Spencer Gluck. Defendant was then placed under arrest and was subsequently positively identified by the cab driver.

Viewing the evidence in a light most favorable to the People (*People v Morgan,* 66 NY2d 255, *on remittitur* 116 AD2d 919,

*cert denied* 476 US 1120), defendant's guilt was established beyond a reasonable doubt. Despite defendant's attempt to cast suspicion on the patron who had fought with the victim earlier that night, the proof was legally sufficient to demonstrate that defendant was the perpetrator. It is uncontroverted that the victim received 19 stab wounds to the visceral area. Although a knife was not seen in defendant's hands, he was observed repeatedly striking the victim with uppercuts. Medical evidence showed that the victim would not have been able to walk or talk more than a minute after having been stabbed, but, just prior to the fight with defendant, he had left the bar in apparent good health. By the time the cab driver came to the victim's assistance, he had already been mortally wounded. Defendant was the only person during this period to have interacted with the victim. Defendant then disappeared for 4½ years, moved to a new address and assumed a fictitious name. The cab driver positively identified defendant as the person who had been involved in the fight with the victim. When defendant was discovered at his new address, he consistently acted in a manner evincing a consciousness of guilt. Accordingly, the evidence was sufficient to establish beyond a reasonable doubt defendant's guilt of murder in the second degree *(see, People v Benzinger,* 36 NY2d 29).

The court did not err in refusing to submit assault in the third degree as a lesser included offense. While assault in the third degree is, technically, a lesser included offense of murder in the second degree, no reasonable view of the evidence herein permits a conclusion that defendant had only punched, rather than stabbed, the victim *(see, People v Scarborough,* 49 NY2d 364). Finally, defendant failed to preserve any challenge to the prosecutor's objections during counsel's summation on the ground that the District Attorney was intent only to "break up counsel's arguments" and thereby prejudice his case. Defendant never objected on this basis and did not request curative instructions (CPL 470.05 [2]; *People v Medina,* 53 NY2d 951). Concur—Kupferman, J. P., Milonas, Ellerin, Wallach and Rubin, JJ.