■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JOHNNY PAGAN, Appellant.—Judgment, Supreme Court, New York County (Franklin Weissberg, J.), rendered November 22, 1988, convicting defendant of the crimes of attempted robbery in the first degree (two counts), attempted robbery in the second degree (two counts), criminal possession of a weapon in the second and third degrees, and assault in the second degree and sentencing him, as a predicate felon, to concurrent indeterminate terms of imprisonment of from 7½ to 15 years on the first degree attempted robbery counts and the second degree criminal possession of a weapon count and 3½ to 7 years on each of the remaining counts, unanimously affirmed.

On the morning of October 15, 1987 complainant Daniel Reed, a retired, 22-year veteran of the New York City Police Department and chauffeur, had driven his employer's wife from her Long Island estate to Manhattan's upper east side to do her marketing. Having parked the automobile on 71st Street between Second and Third Avenues, Reed awaited her return. With the doors unlocked and the windows open, he sat reading the newspaper when two men entered the rear compartment of the automobile by the right rear door. The first individual slid across the seat directly behind Reed and placed his hands on his shoulder, directing him to "take it easy" and to prepare to drive the vehicle away from the scene. As he glanced over his right shoulder, Reed looked face to face with defendant, who held a pistol. The retired officer reached for his pistol and swung his right arm over the rear of the two front seats of the automobile, jamming his pistol into defendant's lower abdominal area. The two pistols discharged almost simultaneously. The two perpetrators fled the scene as Reed, despite being wounded in the arm and back, took up the

chase. Further gunfire was exchanged as defendant and his accomplice fled across 71st Street towards Third Avenue. Defendant dropped his pistol in front of a bystander who later gave it to responding police officers. Defendant and his companion were spirited away in a waiting vehicle driven by a third man. Shortly thereafter, defendant was dropped off at Lincoln Hospital, where emergency surgery was performed.

Detectives interviewed defendant the next day at his bedside in the intensive care unit. Inasmuch as 20 hours had elapsed since defendant's surgery, the hospital staff allowed the interview to be conducted after determining that defendant was awake and alert. After being given the *Miranda* warnings, defendant spoke expansively both in response to direct questions and of his own volition. These statements were reduced to writing and then read and signed by defendant. Although the statement was unequivocal about his participation in the bungled robbery attempt, defendant clearly sought, as he did in later statements, to implicate one of his accomplices as the gunman.

Viewing the evidence, as we must, in the light most favorable to the People *(see, People v Malizia,* 62 NY2d 755, 757, *cert denied* 469 US 932), it is clear that defendant's guilt was proved beyond a reasonable doubt. The question of defendant's mental state at the time of the taking of his inculpatory statement was explored by defense counsel in his examination of defendant's common-law wife, whose description of defendant's debilitated condition was controverted by that of the interviewing detective and the hospital record. The jury's determination with respect to issues of credibility is to be given due deference. *(People v Bleakley,* 69 NY2d 490, 495; *People v Wright,* 159 AD2d 282.)* Defendant was clearly awake and alert enough to attempt to shift the role of shooter to one of his accomplices.

Defendant argues, for the first time on appeal, that the prosecutor's summation constituted an impermissible bolstering of the People's witnesses and, as did a portion of the court's reasonable doubt charge, a shifting of the burden of proof. No objection was made at trial to the remarks now complained of and thus the issue has not been preserved for review. *(See, People v Dordal,* 55 NY2d 954.)* In any event, were we to reach these issues in the interests of justice, we would find them to be without merit.

The prosecutor's comments relating to the credibility of the People's witnesses did not constitute bolstering or vouching because they were in direct response to defense counsel's

attacks on Reed's identification of defendant as the shooter *(see, People v Geddes,* 134 AD2d 279, 280, *lv denied* 70 NY2d 1006; *People v Bailey,* 155 AD2d 262, *lv denied* 75 NY2d 810) and, in their totality, were responsive to defense counsel's closing arguments *(see, People v Morgan,* 66 NY2d 255, *cert denied* 476 US 1120; *People v Galloway,* 54 NY2d 396, 401). Likewise, we reject any argument that the jury was given an improper instruction in regard to the reasonable doubt standard. The language deemed offensive by defendant was illustrative and part of a larger well-rounded charge which conveyed the proper standard of proof to the jury *(see, People v Jones,* 148 AD2d 547, 549). Concur—Sullivan, J. P., Carro, Milonas, Kassal and Smith, JJ.