THIRD DEPARTMENT, JUNE, 2002

(June 6, 2002)

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v VICTOR BAILEY, Appellant. [743 NYS2d 610] —Mugglin, J. Appeal from a judgment of the County Court of Schenectady County (Tomlinson, J.), rendered November 19, 1997, upon a verdict convicting defendant of the crimes of criminal sale of a controlled substance in the third degree (two counts), criminal possession of a controlled substance in the third degree (two counts) and criminal possession of a controlled substance in the seventh degree (two counts).

At trial, the prosecution established that, while working undercover as part of a community narcotic enforcement team, State Trooper Robert Barksdale was driving an unmarked State Police car in which Investigator Steven James was a passenger. Upon seeing defendant and one Jason Smith, also known as James Brown (hereinafter Brown), they pulled to the curb and James asked Brown if he "had a 20,* one for me and one for my buddy." Brown told the officers to shut the car off, which they did. James took out a $20 bill, intending to give it to Brown, but it was taken by defendant. Brown then handed James a small packet of cocaine. Barksdale then specifically asked defendant for "a 20" and defendant stated "yes, he had some." Barksdale reached across James and the $20 bill he

---

* A "20" is common parlance in the drug trade for a $20 packet of crack cocaine.

held was taken by defendant. Brown then handed another packet of cocaine to Barksdale. Both officers testified that, based on their years of experience as undercover officers, it was common for one defendant to control the money while the other controlled the drugs. James and Barksdale then radioed a backup team, informing them of the two purchases. The backup team, located only two blocks away, quickly spotted defendant and Brown and identified them.

After trial, defendant was convicted of two counts each of criminal sale of a controlled substance in the third degree, criminal possession of a controlled substance in the third degree and criminal possession of a controlled substance in the seventh degree. Defendant was sentenced as an admitted second felony offender to concurrent prison terms of 10 to 20 years on each count of third degree sale and third degree possession, and to a one-year definite term on each count of seventh degree possession. Defendant appeals, challenging, inter alia, the sufficiency of the evidence, the weight of the evidence, the effectiveness of trial counsel, and the harshness of the sentence.

In assessing the legal sufficiency of the evidence, an appellate court views it in the light most favorable to the People and "must determine whether there is any valid line of reasoning and permissible inferences which could lead a rational person to the conclusion reached by the jury on the basis of the evidence at trial" (*People v Bleakley*, 69 NY2d 490, 495; *see, People v Contes*, 60 NY2d 620, 621; *People v David*, 234 AD2d 787, 790, *lv denied* 89 NY2d 1034; *People v Johnson*, 209 AD2d 721, 722, *lv denied* 84 NY2d 1033). As defendant was indicted as a principal, and the trial evidence does not establish that he physically possessed the drugs, the People must establish constructive possession beyond a reasonable doubt. To do so, the evidence in chief must establish that defendant exercised dominion and control over the property or over the person who actually possessed the property (*see, People v Manini*, 79 NY2d 561, 573-574). Our review of the record leads to the conclusion that there is sufficient evidence of both possession and sale on the part of defendant. Not only did defendant specifically indicate to Barksdale that he had drugs, in both transactions the drugs were not delivered until defendant was in receipt of the money, following which the drugs were handed over by Brown without any verbal instruction from defendant. This evidence provides a rational basis to conclude that defendant had the necessary dominion and control over Brown to support the jury finding that defendant was in constructive possession.

Next, in assessing defendant's argument that his convictions are contrary to the weight of the evidence, we view the evidence in a neutral light and must determine whether, based upon all the evidence in the record, a different conclusion would not be unreasonable and, upon such finding, weigh the probative force of the conflicting testimony and the relative strength thereof (*see, People v Bleakley, supra* at 495). In this process, we accord great deference to the jury's resolution of issues of credibility given its opportunity to actually see the witness testify. In making this challenge, defendant specifically attacks the credibility of the undercover officers pointing to inconsistencies in their respective testimony concerning the sales, and he further attacks the identification evidence by focusing on alleged inconsistencies in the testimony of the two undercover officers and the description of defendant given to the backup officers. By its verdict, however, it is clear that the jury accepted the testimony of the officers regarding the two separate sales and the identification of defendant as a participant in the transactions, and we discern no reason from this record to disturb the jury's credibility resolutions. As a result, we conclude that the verdicts are supported by the weight of the evidence.

Defendant's claim of ineffective assistance of trial counsel includes counsel's agreement to avoid motion practice by entering into a voluntary disclosure agreement with the People, his waiver of a *Wade* hearing, and his handling of trial testimony concerning a conversation between one of the undercover officers and defendant which occurred several weeks prior to these drug sales. We find no merit to these complaints. While there is no precise yardstick for measuring the effectiveness of counsel, "[s]o long as the evidence, the law, and the circumstances of a particular case, viewed in totality and as of the time of the representation, reveal that the attorney provided meaningful representation, the constitutional requirement will have been met" (*People v Baldi*, 54 NY2d 137, 147). As a result of the voluntary disclosure agreement, more evidence was disclosed to counsel than would ordinarily be available through motion practice. Counsel waived the *Wade* hearing since that was a condition of maintaining a favorable plea bargain offer. Moreover, the photographic array used to identify defendant was fully, adequately and timely disclosed, and our review thereof reveals a complete absence of any likelihood of success concerning the suppression of the identification testimony.

In addition, we perceive no error occurring as a result of the failure of the People to specify in their CPL 710.30 notice the

previous conversation between one of the undercover officers and defendant. This conversation took place several weeks prior to the drug transaction because of a chance meeting between the two and was not relevant to this case. Consequently, it does not constitute any portion of an identification procedure required to be disclosed under the statute.

The balance of defendant's contentions are without merit. Nothing in the prosecutor's summation or his conduct in the prosecution of this case rises to the level where it deprived defendant of a fair trial (*see, People v Ashwal*, 39 NY2d 105, 109; *People v Luciano*, 213 AD2d 729, 731). Likewise, we find no error or deficiency in the jury charge. Where, as here, a particular charge is supported by both circumstantial and direct evidence, a circumstantial evidence charge need not be given (*see, People v Daddona*, 81 NY2d 990, 992; *People v Barnes*, 50 NY2d 375, 379-380). County Court's identification charge was sufficient, as detailed instructions on the issue are unnecessary (*see, People v Whalen*, 59 NY2d 273, 278). With respect to defendant's sentence, we find it neither harsh nor excessive given his criminal history and the fact that the sentence is less than the maximum authorized (*see, People v Dolphy*, 257 AD2d 681, 685, *lv denied* 93 NY2d 872).

As a final matter, with respect to defendant's conviction of two counts of criminal possession of a controlled substance in the seventh degree, we conclude these to be inclusory concurrent counts of criminal possession of a controlled substance in the third degree and, therefore, such misdemeanor convictions must be reversed and dismissed (*see, People v Florez*, 265 AD2d 491, *lv denied* 94 NY2d 880; *People v Brown*, 198 AD2d 291, *lv denied* 82 NY2d 891; *People v Nickens*, 121 AD2d 199, *lv denied* 72 NY2d 960). When inclusory counts are submitted for consideration, they must be submitted in the alternative since a conviction on the greater count is deemed a dismissal of every lesser count (*see,* CPL 300.40 [3] [b]; *People v Paige*, 120 AD2d 808, 811, *lv denied* 68 NY2d 772).

Cardona, P.J., Peters, Carpinello and Lahtinen, JJ., concur. Ordered that the judgment is modified, on the law, by reversing defendant's convictions for criminal possession of a controlled substance in the seventh degree on counts three and six of the indictment; said counts dismissed; and, as so modified, affirmed.