■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v CHRISTOPHER LOVE, Appellant. [762 NYS2d 162] —Kane, J. Appeal from a judgment of the County Court of Chemung County (Buckley, J.), rendered February 7, 2000, upon a verdict convicting defendant of the crimes of sodomy in the first degree (two counts) and burglary in the second degree.

Defendant knocked on the victim's door early in the morning. When she opened it a crack, he pushed his way into the house, grabbed her by the shoulders and backed her up to the couch. After pushing her onto the couch and threatening that he or his friends would hurt her if she screamed or told anyone, he engaged in sexual acts with her. Defendant was indicted for

rape in the first degree, burglary in the second degree and two counts of sodomy in the first degree. After trial, where the victim's testimony was controverted by some of the physical evidence and defendant's version of the incident, the jury acquitted defendant of rape, but found him guilty on the remaining charges. County Court sentenced defendant, as a second violent felony offender, to concurrent determinate prison terms of 22 years for each sodomy count and 10 years for the burglary count.

Defendant claims that his convictions were not supported by legally sufficient evidence and were against the weight of the evidence. Legal sufficiency examines "whether there is any valid line of reasoning and permissible inferences which could lead a rational person to the conclusion reached by the jury on the basis of the evidence at trial and as a matter of law satisfy the proof and burden requirements for every element of the crime charged" (*People v Bleakley,* 69 NY2d 490, 495 [1987] [citation omitted]). It is a determination of whether, viewing the evidence in a light most favorable to the prosecution (*see People v Contes,* 60 NY2d 620, 621 [1983]; *People v Smith,* 302 AD2d 677, 679 [2003]), the People established a prima facie case (*see People v Zabala,* 290 AD2d 578, 578 [2002], *lv denied* 97 NY2d 735 [2002]).

The victim's testimony that defendant placed his penis in her mouth, and the testimony of two police officers recounting defendant's statements that he kissed the victim's vagina, provided evidence of two separate acts of deviate sexual intercourse (*see* Penal Law § 130.00 [2]). Evidence of forcible compulsion was provided through the victim's testimony that defendant pushed his way in the door, grabbed her shoulders, pushed her onto the couch, threatened harm to her and her children by himself or his friends, and that she told him to stop and tried to push him away, yet he persisted (*see* Penal Law § 130.00 [8]; *People v Smith, supra* at 679; *People v Alford,* 287 AD2d 884, 886 [2001], *lv denied* 97 NY2d 750 [2002]). This was legally sufficient evidence to establish the elements of the two counts of sodomy in the first degree (*see* Penal Law § 130.50). As intent to commit a crime may be reasonably inferred from the circumstances where a person's entry of a building is without the owner's permission (*see People v Castillo,* 47 NY2d 270, 277 [1979]; *People v Rivera,* 301 AD2d 787, 789 [2003], *lv denied* 99 NY2d 631 [2003]; *People v Ferguson,* 285 AD2d 838, 839 [2001], *lv denied* 97 NY2d 641 [2001]), the testimony regarding defendant pushing his way into the victim's home, along with the evidence concerning the sodomy charges, made

out a prima facie case of burglary in the second degree (*see* Penal Law § 140.25 [2]).

"If based on all the credible evidence a different finding would not have been unreasonable, then [this Court] must, like the trier of fact below, 'weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony'" (*People v Bleakley, supra* at 495 [citations omitted], quoting *People ex rel. MacCracken v Miller,* 291 NY 55, 62 [1943]; *see People v Zabala, supra* at 579). Inconsistencies between the victim's testimony and the physical evidence, or the victim's and defendant's versions of events, merely created credibility issues for the jury to consider (*see People v Smith, supra* at 679; *People v Rivera,* 281 AD2d 702, 703 [2001], *lv denied* 96 NY2d 805 [2001]). The lack of semen in the victim's mouth does not negate a finding of sodomy, as ejaculation is not a required element and the victim never indicated that defendant ejaculated in her mouth. Additionally, given the circumstances of the crime, the jury may well have believed that the victim was mistaken in her belief that defendant ejaculated in her vagina. The jury's choice to believe the victim's version and discredit defendant's was not "manifestly erroneous [or] plainly unjustified by the evidence" (*People v Corporan,* 169 AD2d 643, 643 [1991], *lv denied* 77 NY2d 959 [1991]). "[V]iewing the evidence in a neutral light but according due deference to the jury's 'opportunity to view the witnesses, hear the testimony and observe demeanor'" (*People v Rivera,* 281 AD2d at 703, quoting *People v Bleakley, supra* at 495 [citation omitted]), the verdict was not against the weight of the evidence (*see People v Smith, supra* at 679).

Defendant next contends that County Court erred by failing to grant a mistrial or give an *Allen* charge when the jury indicated that it was deadlocked. While a mistrial may be granted where the jury has deliberated for an extensive period of time without reaching agreement upon a verdict and the court determines that no agreement is likely within a reasonable time (*see* CPL 310.60 [1] [a]), the decision on a mistrial motion is within the trial court's discretion and will only be disturbed if it amounts to an abuse of discretion (*see People v Baptiste,* 72 NY2d 356, 360 [1988]; *People v Michael,* 48 NY2d 1, 9 [1979]). Factors for the court to consider include "the length and complexity of the trial, the length of the deliberations, the extent and nature of the communications between the court and the jury, and the potential effects of requiring further deliberation" (*Matter of Plummer v Rothwax,* 63 NY2d 243,

251 [1984]). The trial here lasted a day and a half, but basically boiled down to whether the jury believed the victim's or the defendant's version of events. Although the jury had the case for over nine hours when, at 11:00 P.M., it sent a note to inform the court that it was deadlocked, that time period included two meal breaks and readbacks of the victim's and defendant's testimony, which significantly reduced actual deliberation time. The court properly determined that allowing the jurors to get some rest and resume afresh in the morning would be prudent, thus properly exercising its discretion. By failing to request an *Allen* charge, defense counsel failed to preserve that issue (*see People v Johnson,* 59 NY2d 1014, 1016 [1983]; *People v Velez,* 150 AD2d 514, 515 [1989], *lv denied* 74 NY2d 748 [1989]). In any event, it was not error to allow the jurors to continue without that charge, and they were able to reach a verdict after only about an hour and a half of deliberations on the second day. Also unpreserved is the argument regarding juror coercion based on the alleged swing in the jury's vote from 11 to 1 for acquittal at night to unanimous conviction early the next day, as there is no record proof of the jury's vote during deliberation nor of the jury's nighttime inclinations other than defendant's assertions that counsel told him so.

Defendant also contends that County Court erred by denying him access to the victim's Department of Social Services (hereinafter DSS) records and limiting cross-examination regarding fabrication and the victim's abuse of her children. The scope and extent of cross-examination is committed to the trial court's sound discretion and will not be disturbed absent an abuse or injustice (*see People v McNamara,* 304 AD2d 908, 909 [2003]; *People v Mothon,* 284 AD2d 568, 570 [2001], *lv denied* 96 NY2d 865 [2001]). While defense counsel stated that he had information that the victim had previously made false rape accusations against a stepfather and foster parents, County Court reviewed her DSS files and found no information regarding any false allegations. Defendant's argument that the court could not have thoroughly reviewed the file in such a short time is speculative and is belied by the court's statement that it performed an in camera review of the entire set of files. The court also acknowledged its willingness to entertain the matter further if defendant made an offer of proof before asking questions about false rape reports, but no such offer was tendered (*see People v Yusufi,* 247 AD2d 648, 650 [1998], *lv denied* 92 NY2d 863 [1998]). Considering the confidential nature of DSS files (*see* Social Services Law § 372 [3]; § 409-f) and the lack of any relevant information in those files, the court properly

denied disclosure. The court also did not err in limiting cross-examination regarding the victim's treatment of her own children to whether the children had been taken into foster care as a result of her abuse or neglect, without permitting counsel to delve into the details of such conduct. Trial courts have broad discretion and wide latitude to limit cross-examination on collateral matters designed to impeach the victim's credibility (*see People v Griffin,* 194 AD2d 738, 739 [1993], *lv denied* 82 NY2d 754 [1993]; Prince, Richardson on Evidence § 6-305 [Farrell 11th ed]).

Contrary to defendant's contentions, viewing the circumstances of this case in totality, defendant was provided with meaningful representation (*see People v Benevento,* 91 NY2d 708, 711 [1998]; *People v Gilliam,* 300 AD2d 701, 701 [2002], *lv denied* 99 NY2d 628 [2003]). Disagreement or unhappiness with counsel's strategies or tactics does not equal denial of meaningful representation (*see People v Berroa,* 99 NY2d 134, 138 [2002]; *People v Gilliam, supra* at 701; *People v Nichols,* 289 AD2d 605, 606 [2001], *lvs denied* 98 NY2d 639, 731 [2002]). Defendant complained that counsel did not subpoena witnesses he requested. Defendant read into the record after trial a letter from one of the victim's relatives who allegedly would have testified that the victim was a "pathological liar," but that letter indicated the relative's misinformation regarding the incident and no specific basis for her opinion of the victim. If the letter was indicative of the testimony to be offered by these witnesses, counsel may have had legitimate or strategic reasons for failing or refusing to call them (*see People v Horan,* 290 AD2d 880, 885 [2002], *lv denied* 98 NY2d 638 [2002). Defendant also complains about counsel's failure to provide him with papers, but the record indicates that prior counsel provided many documents and does not indicate any specific documents in counsel's possession that were not provided.

Defense counsel's failure to move for County Court's recusal did not render representation ineffective. Even if the motion had been made and the court refused to recuse itself, there must be a showing that the court's bias affected the results of the jury trial to secure a reversal of the conviction (*see People v Moreno,* 70 NY2d 403, 407 [1987]; *People v Alnutt,* 172 AD2d 1061 [1991], *lv denied* 78 NY2d 1073 [1991]). The record does not reveal any rulings affected by the court's alleged bias. Additionally, counsel may have had a strategic reason for not making a recusal motion (*see People v Rieman,* 144 AD2d 110, 112 [1988]). Counsel was under an obligation not to make frivolous motions (*see* 22 NYCRR 1200.33 [a] [2]). The record

contains no proof that avenues defendant wished counsel to pursue were valid, and defendant failed to meet his burden of demonstrating that counsel lacked any strategic reason for all the actions alleged to be ineffective representation as he did not provide any factual proof that these actions were proper or would have been successful. Defendant should have provided such proof in a postverdict motion (*see* CPL 440.10 [1] [h]). Considering the active role played by counsel at trial, and defendant's acquittal on the most serious charge (*see People v Douglas,* 296 AD2d 656, 658 [2002], *lv denied* 99 NY2d 535 [2002]), defendant received the effective assistance of counsel. Counsel's representation similarly was not deficient under the federal standard enunciated in *Strickland v Washington* (466 US 668, 687 [1984]; *see People v Parker,* 220 AD2d 815, 816 [1995], *lv denied* 87 NY2d 1023 [1996]).

Finally, although defendant's sentence was lengthy, it was justified by his criminal history spanning four decades, his status as a second violent felony offender, numerous violations of parole, the fact that he had been paroled less than two weeks prior to this incident and the nature of this crime as a sexual attack on a young woman who was seven months pregnant. Accordingly, we find that defendant's sentence was neither harsh nor excessive, nor are there any extraordinary circumstances warranting modification (*see People v David,* 263 AD2d 615, 615 [1999]).

Cardona, P.J., Spain, Carpinello and Mugglin, JJ., concur. Ordered that the judgment is affirmed.