■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JOHN L. ROUSE, JR., Appellant. [771 NYS2d 579]—

Lahtinen, J. Appeal from a judgment of the County Court of Essex County (Halloran, J.), rendered July 5, 2000, upon a verdict convicting defendant of the crimes of attempted murder in the second degree, assault in the first degree, robbery in the first degree and criminal possession of a weapon in the third degree.

Defendant (a male in his twenties) resided with the victim's brother and the victim (a female in her sixties) in various locations throughout the country for several years and, after the victim's brother was incarcerated, defendant continued living with the victim. On November 21, 1998, defendant and the victim were involved in an incident in the apartment they shared in the hamlet of Ausable, Essex County, which resulted in, among other things, the victim's neck being cut with a knife. Differing versions were related of the events of that evening.

According to the victim, defendant returned to the apartment after being at a party and began choking her, later slashing her neck with a butcher knife and telling her that he was doing this because she had cooperated in the criminal prosecution of her brother. She testified that defendant next forced her to engage in sex with him. Ensuing events included, among others, defendant pointing a knife at her chest as he took various items of the victim's personal property. He reportedly told her that he had cut the phone lines and that he intended to kill her and then burn down the apartment building. Stripped of her clothes by defendant, the victim escaped by running naked to a neighbor's apartment while defendant was loading pilfered items into a car. Police were summoned, defendant fled, but he was apprehended later that evening.

Defendant testified at trial and related a much different story. He claims that he informed the victim that he had decided to move out because she was mishandling his Social Security disability payments. Thereafter, the victim, wearing only a bath robe, confronted him while wielding a knife. As he allegedly attempted to defend himself, the victim fell and cut her own neck. He carried her to a car intent on transporting her to a hospital. When he returned to the apartment to retrieve the car's key, the victim left the car. Told by a neighbor that the victim had run down the street naked, he drove around looking for her. He acknowledged trying to obtain a gun later that night, but added that he did so because he felt badly about what had happened to the victim and he had decided to kill himself.

After considering the testimony of the victim and defendant, as well as numerous individuals who were called as witnesses and the other evidence presented at trial, the jury found defendant guilty of attempted murder in the second degree, assault in the first degree, robbery in the first degree and criminal possession of a weapon in the third degree. He was found not guilty of a sodomy charge. Defendant, a second felony offender, received prison terms of 25 years for each of the convictions for attempted murder, assault and robbery, and 3½ to 7 years for the criminal possession of a weapon conviction. The sentence for robbery was consecutive to the sentences for the other crimes, which were imposed concurrently. Defendant appeals.

Defendant initially challenges the legal sufficiency of the evidence regarding the robbery conviction and the weight of the evidence as to all the convictions. Turning first to the legal sufficiency argument, the test employed on appeal is whether the evidence, viewed in the light most favorable to the prosecution, could lead a rational trier of fact to conclude that each element of the charged crime was established (*see People v Bleakley*, 69 NY2d 490, 495 [1987]; *People v Love*, 307 AD2d 528, 529 [2003], *lv denied* 100 NY2d 643 [2003]). The victim testified that defendant's conduct during the course of the evening included putting a knife to her chest and demanding her jewelry. He forcibly pulled a necklace from her and, when she had trouble removing a ring, he threatened to cut off her finger. Defendant took these items, as well as other personal property that the victim testified belonged to her. This evidence is legally sufficient to support the conviction of robbery in the first degree (*see* Penal Law § 160.15 [3]; *People v Romano*, 232 AD2d 507 [1996], *lv denied* 89 NY2d 1100 [1997]; *People v Anderson*, 204 AD2d 191 [1994], *lv denied* 85 NY2d 905 [1995]; *People v Wells*, 166 AD2d 909 [1990], *lv denied* 76 NY2d 992 [1990]).

Considering next defendant's weight of the evidence argument, after viewing the evidence in a neutral light and affording due deference to the jury's resolution of credibility issues (*see People v Bleakley, supra* at 495; *People v Bailey*, 295 AD2d 632, 634 [2002], *lv denied* 98 NY2d 766 [2002]), we are unpersuaded by his argument. In addition to the victim's testimony, proof was offered from several witnesses who provided evidence corroborating the victim's version of events. Moreover, the physician who performed emergency surgery on the victim explained the life-threatening nature of the injury to her neck. Defendant centers his argument regarding the weight of the evidence on the contention that the victim's testimony was elicited through leading questions. Initially, we note that

objections to some of the prosecutor's questions were sustained as leading. However, to the extent that part of the victim's testimony was in response to questions that could be characterized as leading and for which no objection was taken, we discern no reason to accord that evidence diminished consideration. Defendant's attempt to establish an alternative explanation for the victim's injury was rejected by the jury, and we decline to disturb the jury's determination. The jury's verdict is fully supported by the weight of evidence presented at trial.

Defendant contends that County Court erred in denying his motion to dismiss on speedy trial grounds made pursuant to both CPL 30.20 and 30.30. Considering first CPL 30.30 (1) (a), under that statute "the People must be ready for trial within six months of the commencement of a criminal action accusing a defendant of a felony offense" (*People v Carter*, 91 NY2d 795, 798 [1998]). Properly announcing readiness within six months does not foreclose further analysis under CPL 30.30 since "postreadiness delay may be charged to the People when the delay is attributable to their inaction and directly implicates their ability to proceed to trial" (*id.* at 799; *see People v McKenna*, 76 NY2d 59 [1990]). The first accusatory instrument was filed against defendant on November 22, 1998. He was indicted on March 23, 1999 and, on that same date, the People mailed a statement of readiness to defendant. The statement was filed with the court clerk on March 25, 1999. The statement of readiness was thus served and filed well within the six-month time frame required by CPL 30.30. Since it is apparent from the record that the People had ample evidence to proceed to trial at the time they served their statement of readiness, the fact that they continued gathering evidence thereafter does not, as urged by defendant, render their statement "illusory" (*see People v Carey*, 241 AD2d 748, 751-752 [1997], *lv denied* 90 NY2d 1010 [1997]). No significant postreadiness delays chargeable to the People were established.

Nor are we persuaded that CPL 30.20 was violated. After reviewing the record in light of the factors set forth in *People v Taranovich* (37 NY2d 442, 445 [1975])—and noting particularly the seriousness of the crimes, the absence of any indication that the defense was impaired or prejudiced and the lack of a showing of significant delays attributable to the People—we find that County Court properly concluded that the delay of approximately 13 months between defendant's arrest and his speedy trial motion did not establish a violation of CPL 30.20 under the prevailing circumstances.

We also find no merit in defendant's assertion that County

Court failed to adequately consider his application for new counsel. Generally, "a defendant may be entitled to new assigned counsel upon showing 'good cause for a substitution,' such as a conflict of interest or other irreconcilable conflict with counsel" (*People v Sides*, 75 NY2d 822, 824 [1990], quoting *People v Medina*, 44 NY2d 199, 207 [1978]). In response to the motion, County Court gave defendant and his attorney an opportunity to explain on the record the problems in the relationship. Defendant acknowledged that he was "not asking for another lawyer" and that he had "nothing bad" to say about his attorney. While the two had differences about how some aspects of the defense should be approached, there was not a showing of sufficient good cause to warrant a change of counsel (*see People v Tenace*, 256 AD2d 928, 930 [1998], *lv denied* 93 NY2d 902 [1999]).

Nor do we find merit in defendant's argument that the verdict of guilty on the robbery charge was inconsistent with the verdict of not guilty on the sodomy charge. This argument is premised upon the fact that both crimes contain an element of forcible conduct. However, the evidence established that the conduct allegedly constituting the two crimes occurred at different times and in different parts of the apartment. Examination of the elements charged regarding each crime reveals that the jury's verdict was not "an inherently self-contradictory verdict" (*People v Tucker*, 55 NY2d 1, 8 [1981]; *see People v Trappier*, 87 NY2d 55, 58 [1995]; *People v Bombard*, 203 AD2d 711, 713 [1994], *lv denied* 84 NY2d 823 [1994]).

Defendant contends that County Court erred in imposing a consecutive sentence for the robbery conviction. We cannot agree. Multiple offenses committed through separate and distinct acts, even if part of a single transaction, may result in consecutive sentences (*see People v Arroyo*, 93 NY2d 990, 992 [1999]; *People v Salcedo*, 92 NY2d 1019, 1021 [1998]; *People v Ramirez*, 89 NY2d 444, 451 [1996]). The relevant events transpired over approximately a two-hour period and the victim testified that one of defendant's initial acts during that time was cutting her neck in the bathroom while telling her that he was doing this because she had cooperated in a criminal prosecution against her brother. Later in the evening, he moved her into the bedroom, where he pointed a knife at her chest and demanded various items of her personal property. The acts constituting the robbery were separate and distinct from the other crimes, thus providing a proper basis for County Court to impose a consecutive sentence for the robbery conviction (*see People v Lee*, 92 NY2d 987, 988-989 [1998]; *People v Lucious*,

269 AD2d 766, 769 [2000]; *People v Gonsa*, 220 AD2d 27, 32-33 [1996], *lv denied* 89 NY2d 923 [1996]).

Finally, the sentence imposed is not, as argued by defendant, harsh and excessive nor do we discern any reason to modify it in the interest of justice. Although the sentence is longer than was offered in plea negotiations, it is "within the permissible statutory ranges, and there is nothing to suggest that County Court's imposition of the maximum was in retaliation for the decision to proceed to trial" (*People v Torra*, 309 AD2d 1074, 1076 [2003] [citations omitted]). The remaining arguments have been considered and found unpersuasive.

Spain, J.P., Mugglin, Rose and Kane, JJ., concur. Ordered that the judgment is affirmed.