People v Banks (2024 NY Slip Op 24077)

[*1]

People v Banks

2024 NY Slip Op 24077

Decided on March 14, 2024

Supreme Court, New York County

Beller, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the printed Official Reports.

Decided on March 14, 2024
Supreme Court, New York County

The People of the State of New York

against
Terrence Banks, Defendant.

Ind. No. IND-03212-19

ADA Charlotte Armour and ADA Bethany Spiro, New York County District Attorney's Office, for the People
Susan Calvello, Esq, for the Defendant

Beth Beller, J.

On February 1, 2024, defendant filed a motion to dismiss the instant case pursuant to Criminal Procedure Law ("CPL") §30.30(1)(a), for release pursuant to CPL §30.30(2), challenging the People's Certificate of Compliance ("COC") of February 13, 2020, and all supplemental COCs ("SCOC") filed thereafter, and challenging the People's Certificate of Readiness ("COR") of May 27, 2021. On February 22, 2024, the People filed their response and on March 1, 2024, the People supplemented their response with additional exhibits. For the reasons stated below, the Court finds 32 days chargeable to the People and, accordingly, defendant's motions for release pursuant to CPL §30.30(2) and for dismissal pursuant to CPL §30.30(1)(a) are denied.
BACKGROUND
Defendant stands charged with Predatory Sexual Assault, in violation of Penal Law ("PL") § 130.95, and related charges. Defendant was arrested on October 1, 2019, and arraigned on October 2, 2019. The charges relate to two incidents on July 27, 2019, and August 22, 2019, where defendant is alleged to have sexually assaulted two separate individuals. Defendant was subsequently arrested and arraigned on October 2, 2019.
Defendant was indicted by a New York County Grand Jury on October 7, 2019, for the instant charges. His arraignment was originally scheduled for October 15, 2019, in New York County Supreme Court Part 71, however, defendant was not produced. Amongst their filings on that date, however, the People filed and served a motion to compel a buccal swab from defendant. Defendant was eventually arraigned on October 21, 2019, and the case was adjourned for motion practice. The People served a COC on defense counsel off-calendar on February 11, 2020, and served the same in court on February 13, 2020. Included in the disclosures provided by the People on that date were references to and a copy of voucher 1001263878. See People's Exhibit K, Automatic Disclosure Form at pp. 5, Disclosure List at Item 55. This voucher, as [*2]reported in the Automatic Disclosure Form ("ADF") and later in the People's Search Warrant of January 22, 2024, contained a cell phone that had been recovered from defendant. Id. The case continued throughout the following years, with the People seeking multiple adjournments to obtain DNA evidence, and extensive motion practice on a number of issues, including a protective order, severance, and preclusion of evidence. The People filed multiple SCOCs during this time, including on February 13, 2020, March 12, 2020, May 27, 2021,[FN1]
July 8, 2021, July 5, 2022, October 23, 2023. The People filed their first COR on July 8, 2021.
On January 22, 2024, the People applied to the Hon. Brendan Lantry for a search warrant to search the cell phone contained in voucher 1001263878. The court granted that application. Next, on January 30, 2024, the People applied to the undersigned for another warrant, this time to search a micro-SD card and adapter also allegedly recovered from defendant during his 2019 arrest, under voucher 1001263873.
On February 1, 2024, at the next court appearance, the defense filed the instant motion, along with other motions, on the record and the court set the instant motion schedule. In his motion, defendant contends that because the People applied for search warrants in 2024, the People had not fulfilled their discovery obligations prior to filing their COC, any of their SCOCs, and their CORs, rendering those documents invalid. Defendant therefore concludes that the speedy trial time for the People to answer ready in the case has expired and moves this court both to release him from custody pursuant to CPL §30.30(2) and to dismiss his case pursuant to CPL § 30.30(1)(a). The People oppose and urge the court to find their COC, SCOCs, and COR valid.
LEGAL ANALYSIS
Certificate of Compliance
The CPL provides that the People shall disclose to the defense "all items and information that relate to the subject matter of the case and are in the possession, custody or control of the prosecution or persons under the prosecution's direction or control." See CPL § 245.20(1). CPL § 245.20(1) sets forth a detailed, non-exclusive, list of discovery materials that the People are obligated to disclose to defendant soon after the commencement of the action. In amassing and providing these materials, the law provides that the People "shall make a diligent, good faith effort to ascertain the existence of material or information discoverable under subdivision one of this section and to cause such material or information to be made available for discovery where it exists but is not within the prosecutor's possession, custody or control; provided that the prosecutor shall not be required to obtain by subpoena duces tecum material or information which the defendant may thereby obtain." CPL § 245.20(2). Once the automatic discovery items are provided, service of a valid COC is a condition precedent to the People's declaration of trial readiness and serves to toll the statutory speedy trial time. See CPL § 30.30(5). Should the People later discover additional discoverable "material or information" subject to disclosure, [*3]they are obligated to "expeditiously notify the other party," disclose that material, and file a supplemental certificate of compliance. CPL § 245.60. "The filing of a supplemental certificate of compliance shall not impact the validity of the original Certificate of Compliance if filed in good faith and after exercising due diligence pursuant to section 245.20 of [the CPL], or if the additional discovery did not exist at the time of the filing of the original Certificate of Compliance." CPL § 245.50 (1-a). If the court finds that the People belatedly disclosed material subject to CPL § 245 disclosure, "the court shall impose a remedy or sanction that is appropriate and proportionate to the prejudice suffered by the party entitled to disclosure." CPL § 245.80 (emphasis added).
The Court of Appeals has recently analyzed, for the first time, the statutory structure of CPL § 245 and discussed the standard of due diligence. The Court stated that "[a]lthough the statute nowhere defines due diligence, it is a familiar and flexible standard that requires the People to make reasonable efforts to comply with statutory directives." People v. Bay, 2023 WL 8629188 (Dec. 14, 2023) at *5. The Court reasoned that any "analysis of whether the People made reasonable efforts sufficient to satisfy CPL article 245 is fundamentally case-specific, as with any question of reasonableness, and will turn on the circumstances presented." Id. at *6. The Court clarified, however, that while the statute does not contemplate the "perfect prosecutor," good faith is insufficient if there is a lack of diligence. Id. The Court lays out multiple factors that a court should consider when assessing whether a prosecutor has acted with due diligence, including (1) the efforts that the prosecutor made to comply with CPL §245; (2) the volume of discovery "provided and outstanding" in the case at the time of the challenge; (3) whether the missing material would have been obvious to a diligent prosecutor; (4) the "complexity of the case;" (5) the prosecutor's "explanation for any discovery lapse;" and (5) how the People responded when they were informed that discovery was missing. Id. Further, the Court of Appeals made clear that "a defendant need not demonstrate prejudice to obtain a speedy trial dismissal based on a failure to timely comply with discovery obligations." Id. at *7.
The Court notes that although six SCOCs have been filed and served in this case, the vast majority of discovery, totaling over 1500 pages and over 30 digital files, was provided with the original COC in February 2020, and, at any rate, before or contemporaneously with the People's first COR on May 27, 2021. This discovery, as reflected in the People's discovery lists, is voluminous and demonstrates the immense efforts that the assigned prosecutors made to comply with their obligations under CPL § 245. It includes all of the information that the Court would expect a reasonably diligent prosecutor to obtain and provide to the defense; including, but not limited to, arrest reports, omniform complaints, witness statements, DD5s, 911 calls, memobooks, vouchers, body worn camera footage, video surveillance, medical records, photographs, and DNA reports. The material provided after the prosecution's July 2021 COR was either de minimus, an update of material previously provided, or not in the People's custody or control at the time their previous certificates had been filed. This Court finds that the People were diligent in collecting, updating, and providing this discovery within the meaning of CPL § 245, as interpreted by Bay. 
Defendant's only contention regarding the sufficiency of the People's COC and SCOCs appears to be that the People decided to seek and execute search warrants on defendant's phone and micro-SD card more than four years after the commencement of the case. Both parties were aware that a cell phone had been recovered from the defendant: the People disclosed to the defense that voucher 1001263878 contained a cell phone recovered from defendant. See People's [*4]Exhibit K, ADF of February 13, 2020, at pp. 5. A copy of that voucher was provided to the defense in connection with the People's February 13, 2020, COC and Disclosure List. See People's Exhibit K at Disclosure List, Item 55. There is no doubt, therefore, that the physical phone itself was under the custody and control of the People, such that they had a duty to disclose its recovery and existence to the defense.[FN2]
See CPL § 245.20(1)(m). The People satisfied that obligation at the time they filed their initial COC and ADF in court on February 13, 2020.
With respect to the digital contents of the phone however, defendant puts what appears to be a question of first impression before this Court: does the application for a search warrant, submitted after the People have certified compliance and readiness for trial, vitiate previous certificates of compliance and readiness? For the reasons explained more fully below, this Court finds that the answer to that question must be no. [FN3]

CPL § 245.20(1)(u)(i) requires that the People provide to the defense "[a] copy of all electronically created or stored information seized or obtained by or on behalf of law enforcement from the defendant . . . or a source other than the defendant which relates to the subject matter of the case." The statute continues that, if the information came from a defendant's device, the prosecution must provide a complete copy of that information to the defense, unless there are portions of that information for which it would be a crime to possess. See CPL 245.20(1)(u)(ii & iii). Nowhere in the statute does it require that the prosecution seek a search warrant on every device it recovers. Indeed, CPL 245.20(1)(u)(iv) makes clear that the discovery statute is not meant to override defendant's right "to be free from unreasonable searches." It further provides that if "in the exercise of reasonable diligence the information under this paragraph is not available for disclosure within the time period required by [CPL 245.10(1)] that period shall be stayed without need for a [protective order] . . . and such disclosure shall be made as soon as practicable and not later than forty-five calendar days before the first scheduled trial date."
This Court must consider the basic tenants of statutory interpretation in order to determine and give effect to the Legislature's intent. See Patrolmen's Benev. Ass'n of City of New York v. City of New York, 41 NY2d 205, 208 (1976). When the language of the statute is "clear and unambiguous, the court should construe it so as to give effect to the plain meaning of the words used." Id. When reading the plain language of CPL §245.20(1)(u) as outlined above, it is clear that the Legislature does not in this section, nor in the other section specifically addressing search warrant materials (CPL § 245.20(1)(n)), mention or imply any circumstances under which the prosecution must seek a search warrant. Instead, it outlines what the People must disclose with respect to the returns from such a warrant, i.e. the "electronically created or stored information seized or obtained by or on behalf of law enforcement." CPL §245.20(1)(u)(i). While the Legislature discusses the prosecution's obligations in terms of "reasonable diligence," it does not follow that this language requires the prosecution to seek a search warrant every time [*5]a device is recovered. See CPL § 245.20(u)(iv). Indeed, the Legislature specifically provides that a defendant's Fourth Amendment rights are not subordinate to their discovery rights. [FN4]
This Court finds that the plain language of the statute references situations where the prosecution, having previously sought and obtained access to the information contained on a device via search warrant or defense consent, is unable to retrieve and provide it to the defense within the time frame required. This Court can imagine many such applicable situations, including, but not limited to, when a device has a passcode that cannot be bypassed in the exercise of reasonable diligence, or when a device contains a particularly voluminous amount of information that cannot be reasonably reviewed within the prescribed time limitations.
This interpretation is supported by the fact that, in other sections of CPL §245.20, the Legislature uses almost identical language to that of subsection (u)(iv) when discussing other types of evidence. For example, in CPL § 245.20(1)(f), the statute notes that if, "in the exercise of reasonable diligence," expert opinion evidence is not available within the time constraints of CPL § 245.10, then that time period shall be stayed. Like CPL § 245.20(1)(u)(iv), this section does not require the People to seek out an expert opinion in every case where such evidence could be obtained. Instead, it merely requires that if the People have sought expert opinion advice, the People must exercise reasonable diligence to obtain the information and disclose it when it is available. See CPL §245.20(1)(f).
Moreover, there are practical and common-sense reasons, in addition to a review of the statute's plain language, for this Court's interpretation of CPL § 245.20(1)(u)(iv). The decision to seek a search warrant in any case is one laden with legal and credibility determinations. A diligent prosecutor seeking a search warrant must analyze the facts of a case to determine whether they believe they can present "information sufficient to support a reasonable belief that . . . evidence of a crime may be found in a certain place." People v. Bigelow, 66 NY2d 417, 423 (1985). This includes interviewing any witnesses providing hearsay information in support of the warrant to determine whether the hearsay informant "had some basis for the knowledge he transmitted to [the police or prosecutor] and that he was reliable." Id. Moreover, with respect to a search warrant for a cell phone, the People must also determine whether they believe there to be evidence that the cell phone at issue was used in such a way and at such a time that it is reasonably likely that evidence of the crime is contained in the data that the cellphone contains. See, e.g., People v. Boothe, 132 NYS 3d 873, 873-74 (2nd Dept 2020) (warrant affirmation insufficient where it did not contain specific factual allegations demonstrating that the cellphone was likely to contain information relevant to the crime at issue). These determinations are [*6]conditions precedent for a diligent prosecutor to seek a search warrant in any case. In some cases, reasonable prosecutors may disagree as to whether probable cause exists or whether a certain witness is reliable to the extent required to present a search warrant application. In other cases, the nature and amount of evidence involved in a case may change over time; witnesses may become cooperative or uncooperative, investigative leads may develop additional evidence or remove particular avenues of investigation from relevant consideration. To require, therefore, a prosecutor to apply for any possible search warrants before they certify compliance would lead to an absurd result in many cases; where prosecutors, afraid of violating the constraints of CPL § 245.20 and accruing speedy trial time under CPL § 30.30, apply for search warrants on any device in their possession, whether or not they have determined that the reliable information and thereby probable cause exists to support the warrant.
Therefore, as discussed supra, while the People may be in possession of a physical device recovered from a defendant during an arrest, as in the instant case, it does not follow that they are in possession of the digital information stored thereupon. As implied by the language of CPL § 245.20(1)(u)(iv), the contents of a device only become available to the People after a search of that device. As discussed above, whether a search is warranted and/or reasonable is either a legal determination made by a judge upon an application supported by probable cause or upon an application made with the consent of the defendant. Accordingly, the Court finds that the digital contents of a device are deemed to be within the prosecution's control for the purposes of CPL § 245 only after the People have sought and obtained a valid search warrant or defendant's consent to search the device at issue, and obtained the results thereof.
With respect to readiness, as an issue separate and apart from compliance, the People need not have exhausted each and every investigative lead in order to be ready for trial. The information contained on a cell phone might corroborate, enhance, or otherwise add evidence that already exists in a case. Conversely, the information could contradict or negate other evidence in the case. In a case such as this, where the crime at issue is not one based on communication contained on a device and the People clearly had "ample evidence to proceed to trial at the time they served their statement of readiness, the fact that they continued gathering evidence thereafter does not . . . render their statement [of readiness] 'illusory.'" See People v. Rouse, 771 N.Y.S.2d 579, 583 (3d Dept 2004).
Accordingly, in a case like the one before this Court, the Court finds that a search warrant for a device is not a condition precedent to certifying compliance and readiness. Once the People applied for the search warrants at issue and obtained the results, they promptly provided those results to the defense. Thus, the court finds that the People demonstrated due diligence in collecting and providing discovery, and that the People's COC, SCOCs, and CORs are valid.
CPL §30.30
Where defendant stands charged with a felony, CPL § 30.30(2) requires that a defendant be released from custody if the People are not ready within ninety (90) days of the commencement of the action. Should the People not be ready within six months (in this case, 183 days) of the commencement of the action, CPL § 30.30(1)(a) requires dismissal of the indictment. Defendant contends that the People have exceeded their allowable speedy trial time under both statutes. As noted above, however, the Court finds that the People's COC, SCOCs, and SOR valid, so the Court finds those arguments unavailing. Defendant further contends that, even if the People's COCs, SCOCs, and CORs were valid, the People have exceeded their [*7]allowable speedy trial time and the case must be dismissed and defendant released. For the reasons set forth below, the Court finds that 32 days have expired and therefore, defendant's motions to be released and to dismiss the indictment pursuant to CPL § 30.30 is denied.
October 2, 2019 to October 7, 2019
Defendant was arraigned in criminal court on October 2, 2019. Bail was set and the case was adjourned to October 7, 2019 for action of a grand jury. The People concede that this adjournment is chargeable to the People. 5 days charged.
October 7, 2019 to October 15 2019
A grand jury in New York County voted the instant indictment, charging defendant with Predatory Sexual Assault, in violation of Penal Law ("PL") § 130.95, and related charges. The case was adjourned to New York County Supreme Court Part 71 for arraignment upon the indictment. 8 days charged (13 total).
October 15, 2019 to October 21, 2019
The case appeared on the calendar, however, despite defendant being in the custody of the New York City Department of Correction with bail set on the instant indictment, he was not produced. While neither party proffers the reason why defendant was not produced, it is of little moment for the purposes of this decision, as the People filed and served a motion to compel a buccal swab in court, and the case was adjourned for the defendant to appear. An adjournment upon the filing of pretrial motions is excludable. CPL § 30.30(4)(a); see People v. Reed, 798 NYS 2d 47, 51 (1st Dept 2005) (applying CPL § 30.30(4)(a) to motions filed by the prosecution). 0 days charged (13 total).
October 21, 2019 to January 6, 2020
Defendant was arraigned on October 21, 2019 and the court set a motion schedule to decide the People's motion to compel and for the defense to file an omnibus motion. 0 days charged (13 total).
January 6, 2020 to January 14, 2020
The court issued its decision on the motions and the case was adjourned for discovery compliance on January 21, 2020. This fifteen (15) day adjournment is a reasonable period of time for the People to prepare for trial after the issuance of the Court's decision, irrespective of whether or not the People had filed a COC. See People v. Aiken, 168 NYS 3d 679 at *3 (NY County Sup. Ct. 2022) (Kiesel, J); People v. Green, 455 N.Y.S.2d 368 (1st Dept 1982). In any event, the People filed a motion for a protective order off-calendar on January 7, 2020 and the case was advanced from January 21, 2020 to January 14, 2020 for a hearing on the People's motion. This period is excludable. 0 days charged (13 total).
January 14, 2020 to January 17, 2020
The court held a hearing on the People's motion for a protective order and the case was adjourned to January 17, 2020 for the court's decision. This period is excludable. 0 days charged (13 total).
[*8]January 17, 2020 to January 24, 2020
The court issued its decision granting the People's motion and adjourned the case for discovery compliance to February 3, 2020. On that same date, January 17, 2020, defendant submitted to the buccal swab order, his sample was collected, and a corresponding invoice was generated. The sample made its way to the Office of the Chief Medical Examiner ("OCME") by January 21, 2020. The case was advanced, however, from February 3 to January 24, 2020 so that the People could supplement their protective order application. This adjournment is excludable as an exceptional circumstance, as the People have demonstrated, both with respect to this adjournment and the adjournments to be discussed, infra, that they exercised due diligence in seeking, obtaining, and processing defendant's DNA sample. See CPL § 30.30(4)(g); People v. Clarke, 28 NY3d 48 (2016); People v. Hamilton, 73 NYS 3d 161, 163 (1st Dept 2018); see also People v. Dunmeyer, 200 NYS 3d 756 at *3 (NY County Sup Ct 2023) (Farber, J). 0 days charged (13 total).
January 24, 2020 to February 24, 2020
The court amended the protective order previously issued and adjourned the case to February 24, 2020 for discovery update and DNA results. On February 11, 2020, the People served an ADF and Certificate of Compliance on the defense. Those documents were then filed with the Court on February 13, 2020. On that same date, the People provided additional discovery, which appears from a review of the discovery list to be a single two-page memobook excerpt, to the defense and filed a SCOC. As discussed, supra, this period is excludable as an exceptional circumstance while the People awaited DNA results. See CPL § 30.30(4)(g); Clarke, 28 NY3d at 52; Hamilton, 73 NYS at 163; see also Dunmeyer, 200 NYS at *3. 0 days charged (13 total).
February 24, 2020 to October 5, 2020
The People provided the OCME Forensic Biology reports to the defense that they had received, and informed the court that there was an additional report outstanding with the OCME. The People stated that they would provide that report to the defense as soon as it was received and requested April 13, 2024, for hearing and trial. The defense requested a date beyond the People's request, indicating that they needed to review the reports to determine whether to retain a defense expert in advance of trial. The court adjourned the case once again for an update on the DNA reports. This adjournment is excludable. See CPL § 30.30(4)(g); Clarke, 28 NY3d at 52; Hamilton, 73 NYS at 163; see also Dunmeyer, 200 NYS at *3. 0 days charged (13 total).
March 20, 2020 to October 19, 2020
On March 20, 2020, CPL § 30.30 time was suspended due to the COVID-19 pandemic. See Executive Order 202.8. It continued to be suspended for indicted felonies until October 19, 2020. See Executive Order 202.67. 0 days charged (13 total).
October 5, 2020 to October 30, 2020
On October 5, 2020, the court held a virtual calendar call. During that appearance, defense counsel represented that he needed to speak with a criminalist to determine whether to [*9]file a motion to sever based on the DNA results.[FN5]
The defense counsel also discussed with the court the possibility of filing a motion to compel the identifying and contact information for the 15-year-old witness, which was then the subject of a protective order. The defense then asked for a conference date in early November. The court adjourned the case for a virtual conference on October 31, 2020. As this adjournment was made at the defense request, the time period between October 19, 2020 (see Executive Order 202.67) and October 30, 2020 is excludable. CPL § 30.30 (4)(a-b).
October 30, 2020 to February 8, 2021
Prior to the court date, the People reviewed the DNA reports in their possession and determined that they wished to have the OCME conduct additional testing on swabs that had not previously been examined. They informed the Court accordingly and the case was adjourned for further DNA results. In light of the extraordinary circumstances presented by the COVID-19 pandemic, and the People's continuous efforts to keep the court and the defense apprised of the progress with the DNA testing, the Court finds this adjournment excludable. See CPL § 30.30(4)(g); Clarke, 28 NY3d at 52; Hamilton, 73 NYS at 163; People v. Logan, 202 NYS 3d 43, 44 (1st Dept. 2023). 0 days charged (13 total).
February 8, 2021 to May 24, 2021
The case was adjourned from February 8, 2021 to February 9, 2021. The record is silent as to the reason for the adjournment. Nevertheless, when the parties appeared before the court on February 9, 2021, the People updated the Court that they had received additional reports showing insufficient male DNA on the tested swabs, but that YSTR testing would now be pursued, and that they had already requested that testing on January 28, 2021. The People requested a month to receive the reports, but the Court put the case on for May 24, 2021. As the People continued to exercise due diligence with respect to the DNA testing in this case, the Court finds this adjournment excludable. See CPL § 30.30(4)(g); Clarke, 28 NY3d at 52; Hamilton, 73 NYS at 163; People v. Logan, 202 NYS 3d 43, 44 (1st Dept. 2023). 0 days charged (13 total).
May 24, 2021 to July 19, 2021
As of this adjournment, the DNA testing had been completed, but was waiting additional reviews at the OCME. The People, who had spoken via email with the OCME, informed the court and counsel that the report would be forthcoming. Accordingly, this adjournment is excludable for that reason. Furthermore, defense counsel requested a control date so that he could review the reports once provided. The court indicated that, due to the requirements [*10]regarding virtual appearances at defendant's correctional facility, the next appearance would be at some point during the week of July 19, 2021, and that the Department of Correction would have to inform the court as to the actual date. As this adjournment was at the defense request, this adjournment is excludable for that reason as well. See CPL §§ 30.30(4)(b) & (g); Clarke, 28 NY3d at 52; Hamilton, 73 NYS at 163; People v. Logan, 202 NYS 3d 43, 44 (1st Dept. 2023). 0 days charged (13 total).
July 23, 2021 to October 22, 2021
On May 27, 2021, the People filed and served a SCOC and additional discovery, which included the updated DNA reports, file, and raw data for the outstanding testing, as well as the CV and proficiency tests for a Joseph Miglorino and the grand jury testimony of an Antonio Fontanet.[FN6]
On July 8, 2021, for the first time, the People certified their readiness to proceed to trial, and submitted an additional supplemental certificate of compliance.
The case was called on Friday, July 23, 2021 (which was the week of July 19, 2021, as discussed on the previous court date). While the defendant was produced virtually, he refused his consent to proceed. The case was adjourned to October for the defense to review the DNA Reports and determine whether to make a Frye motion. This adjournment is excludable for two reasons: first, by refusing to proceed virtually, defendant effectively absented himself from the proceeding. CPL § 30.30(4)(c)(i); second, as the court noted in her notes from the court date, the defense attorney was contemplating submitting a Frye motion, and the case was adjourned to October 22, 2021 for an update on whether they intended to file such a motion. CPL § 30.30(4)(a & b). 0 days charged (13 total).
October 22, 2021 to January 18, 2022
On this date, defense counsel filed a motion to sever in court. The court set a motion schedule and the case was adjourned to January 18, 2022 for the court's decision. This adjournment is excludable. CPL § 30.30(4)(a). 0 days charged (13 total).
January 18, 2022 to March 1, 2022
On the morning of January 18, 2022, a representative from Sing Sing Correctional Facility (where defendant was housed), emailed the court to alert them that defendant would not be produced in court because he had tested positive for COVID-19, despite the People having provided a valid Order to Produce. This adjournment is excludable for that reason, as defendant's absence is not attributable to the government. See CPL §30.30(4)(c)(i). Even if defendant had appeared however, this adjournment would have been excludable because the defense filed an additional motion, for a Frye hearing, off-calendar on December 8, 2021. The Court adjourned the case to March 1, 2022 for decision on defendant's motion for a Frye hearing. See CPL § 30.30(4)(a). 0 days charged (13 total).
March 1, 2022 to March 28, 2022
The defendant was not produced on March 1, 2022. The minutes reflect that neither the parties nor the court were aware of the reason for his non-production. Nevertheless, the court [*11]indicated that it needed additional time to render its decision on defendant's outstanding motion. The court adjourned the case to March 28, 2022 for its decision. This adjournment is excludable. See CPL § 30.30(4)(a). 0 days charged (13 total).
March 28, 2022 to April 25, 2022
On March 28, 2022, the court rendered its decision denying defendant's motion for a Frye hearing. In light of the court's decision, the defense initially requested a control date to set a trial date, instead of a trial date. Defendant asked for an opportunity to address the court, but before he did, the court set April 25, 2022, as the next date as requested by the defense. Defendant then made an application for a new attorney and, after an extensive colloquy with the court, the court granted that request. When the case was called back on the record, defendant indicated that because a female lawyer had been assigned to him, he wished to represent himself. After another extensive colloquy, the court granted defendant's request and assigned current defense counsel, Susan Calvello, as his legal advisor. The court kept the same adjournment date in place so that defendant's legal advisor could review the materials and get up to speed. This adjournment is excludable as a request of the defense. See CPL § 30.30(4)(b). 0 days charged (13 total).
April 25, 2022 to July 25, 2022
By the calendar appearance of April 25, 2022, defendant had changed his mind and asked that Ms. Calvello represent him completely. The court granted defendant's application and assigned counsel to represent him. Because of defendant's pro se status during the last adjournment, and the language of the existing protective order, counsel had not had a sufficient opportunity to review the discovery in advance of the court date. Accordingly, the court gave defense counsel an additional adjournment, until July 25, 2022, so that counsel could review the 7,000+ pages of discovery before selecting a hearing and trial date. This adjournment is excludable. See CPL § 30.30(4)(b). 0 days charged (13 total).
July 25, 2022 to October 11, 2022
On July 5, 2022, the People filed an additional SCOC. On July 28, 2022, a representative at Sing Sing Correctional Facility indicated that defendant refused production from upstate for his July 25, 2022 court appearance. The judge's notes from July 25, 2022 indicate the same information.[FN7]
On that court date, it appears from a review of the judge's notes that the court intended to sign a force order for defendant's appearance if he refused production again. The case was adjourned once again to set a hearing and trial date. As defendant was responsible for absenting himself from this appearance, and the case was on for a control date, this adjournment is excludable. See CPL §30.30(4)(c)(i). 0 days charged (13 total).
October 11, 2022 to February 2, 2023
On October 11, 2022, the case was on once again to set a date for hearing and trial. The minutes reveal that defense counsel indicated that due to her trial schedule, she would be [*12]unavailable to begin hearing and trial before February 2, 2023. The court adjourned the case to the date requested by defense counsel. As this case was on the calendar "to set" a trial date at the defendant's request, the date selected was the one requested by defense counsel, and the People had previously announced ready for trial, this adjournment is excludable. See CPL § 30.30(4)(b). 0 days charged (13 total).
February 2, 2023 to March 6, 2023
On January 16, 2023, and again in court on February 2, 2023, defendant filed and served a motion to sever the two incidents in the indictment. As this case was on the calendar in New York Supreme Court Part TAPB for the first time, the court adjourned the case back to Part 71 for a decision on the motion. This adjournment is excludable. See CPL § 30.30(4)(a). 0 days charged (13 total).
March 6, 2023 to March 20, 2023
By March, 6, 2023, the People had already filed and served their response to defendant's motion and the court adjourned the case to March 20, 2023 for its decision. This adjournment is excludable. See CPL § 30.30(4)(a). 0 days charged (13 total).
March 20, 2023 to March 28, 2023
On March 20, 2023, the court rendered its decision, denying defendant's motion to sever. Defense counsel requested, due to her schedule, that the case be adjourned for control to set a future hearing and trial date. The court granted that request and sent the case back to TAPB for that purpose. As this adjournment was at the request of counsel, it is excludable. See CPL § 30.30(4)(b). 0 days charged (13 total).
March 28, 2023 to April 13, 2023
On March 28, 2023, the parties appeared in TAPB before the Honorable Brendan Lantry to select a trial date. After a conference at the bench, during which the attorneys' schedules were discussed, the case was again adjourned to select a future trial date. This adjournment is excludable. See CPL § 30.30(4)(b). 0 days charged (13 total).
April 13, 2023 to May 3, 2023
On April 23, 2023, defendant did not appear as he was in Bellevue Hospital and could not be produced. Because defendant was not present, this adjournment is excludable. See CPL §30.30(4)(c)(i). 0 days charged (13 total).
May 3, 2023 to May 18, 2023
On May 3, 2023, defense counsel Calvello sent an affirmation to court, indicating that she could not appear. The case was adjourned to May 18, 2023, once again for control and to pick a trial date. This adjournment is excludable. CPL § 30.30(4)(f); People v. Mannino, 761 NYS 2d 189, 190-91 (1st Dept 2003). 0 days charged (13 total).
May 18, 2023 to July 20, 2023
Due to the schedules of both attorneys, the parties requested a date in September to try the case. The court was amenable, but adjourned the case to July 20, 2023 to confirm a [*13]September 21, 2023 trial date. As this case had been on for control and to select a trial date, and the parties both agreed to the adjournment, this adjournment is excludable. 0 days charged (13 total).
July 20, 2023 to August 1, 2023
The minutes from July 20, 2023 confirm that on this date, the People made a new, lower recommendation and defense counsel requested an adjournment to August 1, 2023, on consent, to discuss the offer with defendant. This adjournment is excludable. See CPL § 30.30(4)(b). 0 days charged (13 total).
August 1, 2023 to September 20, 2023
The minutes reveal that on August 1, 2023, the case was on the calendar for possible disposition at the request of counsel. Counsel indicated that defendant was not interested in the new recommendation and asked for a motion schedule to be set so that counsel could apply to the court for an amendment in the existing protective order. This adjournment is excludable. See See CPL § 30.30(4)(a). 0 days charged (13 total).
September 20, 2023 to October 4, 2023
On this date, Justice Lantry informed the parties that he needed additional time to render his decision. The case was adjourned to October 4, 2023 for that purpose. See CPL § 30.30(4)(a). 0 days charged (13 total).
October 4, 2023 to October 16, 2023
On October 4, 2023, Justice Lantry rendered his decision denying defendant's application. The case was adjourned to October 16, 2023 for a new Assistant District Attorney ("ADA") to be assigned, as the previous assistant had recently left the office. While the Court would typically find this adjournment excludable, as the twelve-day adjournment would, in this Court's view, constitute a reasonable time for the People to prepare for trial (See People v. Green, 455 N.Y.S.2d 368, 369 (1982)), the People concede that this adjournment should be chargeable to them. As it is the People's burden to demonstrate that an adjournment is excludable, the Court charges the People with this time. 12 days charged (25 total).
October 16, 2023 to February 1, 2024
On October 16, 2023, the new assigned ADA appeared before the court and requested October 23, 2023 for hearing and trial. The People's affirmation and the court's notes confirm that defense counsel requested January 30, 2024 for hearing and trial. The court adjourned the case to January 30, 2024, as requested by the defense. On October 23, 2023, the People filed a new COR, along with another SCOC, disclosing items that had not previously been in the People's control. The period between October 23, 2023 and January 30, 2024, therefore, is excludable and seven (7) days are charged to the People.
On January 18, 2024, defense counsel emailed the assigned and the Principal Court Attorney to the TAP Parts requesting that the case be adjourned from January 30, 2024 to February 1, 2024. That request was granted. As this one-day adjournment was at defendant's request, it is not chargeable to the People.
On January 22, 2024 and again on January 30, 2024, the People applied for search [*14]warrants to search the cell phone contained in invoice 1001263878 and a micro-SD card and adapter contained in invoice 1001263873. These search warrants and the implications of the People's decision to seek and execute them for the purposes of CPL § 245, are discussed extensively supra and need not be repeated here. As the Court has found that the People's decision to seek these warrants did not vitiate their previous COC, SCOCs, and CORs, their execution and prompt disclosure of the returns has no bearing on the CPL § 30.30 calculation in this case. 7 days charged (32 days total).
February 1, 2024 to March 14, 2024
On February 1, 2024, defense counsel appeared in court and filed the instant motion. The court set a motion schedule and adjourned the case for hearing and trial on March 14, 2024. This adjournment is excludable. See CPL § 30.30(4)(a); People v. Bruno, 752 NYS 2d 34, 36 (1st Dept 2002).
As only 32 days have been found chargeable to the People in this case, defendant's motions for release and dismissal pursuant to CPL § 30.30 are denied.
Dated: March 14, 2024
New York, New York
Beth Beller, A.J.S.C.

Footnotes

Footnote 1:The Court file does not appear to contain a copy of this SCOC and the accompanying discovery list. The People provided an unstamped copy of these documents, however, and represented as an officer of the court that they were, in fact, filed and served. The Court also notes that the Judge's card reflects that the SCOC was, in fact, filed and served on that date. See People's Exhibits U and V. 

Footnote 2:The parties are silent as to whether defendant ever sought to have his phone returned to him or whether the defense sought to inspect the physical property noticed by the People in their ADF. See CPL § 245.20(1)(m).

Footnote 3:This Court is not addressing any potential Fourth Amendment challenges to the warrants, nor is this Court ruling on the admissibility of the search warrant returns at trial. This Court is considering only the narrow question before it.

Footnote 4:The United States Supreme Court has held that the government must obtain a search warrant to search a defendant's electronic device, absent defense consent. See Riley v. California, 573 U.S. 373, 386 (2014) (holding that police "officers must generally secure a warrant before conducting . . a search [of a cell phone]."). Given that the Legislature specified that a defendant's Fourth Amendment rights are not subordinate rights, it follows, as discussed infra, that there may be many cases where a prosecutor cannot supply the requisite probable cause to obtain a search warrant, even where a cell phone has been recovered. In those situations, it would be impossible for the People to obtain and provide the "electronically created or stored information" that such a device contains. Such a situation underscores that this kind of information is not in the People's control unless or until a valid search warrant, or a defendant's consent, is obtained and executed.

Footnote 5:During much of 2020, OCME laboratories "were suspended but for some high priority cases." See Sampson, Barbara, Department of Health and Mental Hygiene Office of Chief Medical Examiner: Preliminary Mayor's Management Report, https://www.nyc.gov/assets/operations/downloads/pdf/pmmr2021/ocme.pdf (last accessed March 6, 2024). Furthermore, the "majority of laboratory staff were temporarily reassigned to assist in the mortuary . . . ." Id. This is further supported by the exchange in the minutes from this date, wherein the ADA and defense counsel discuss whether the "OCME [is] resuming" and referencing that the criminalists can only appear virtually. See People's Exhibit O.

Footnote 6:See n.1 supra. 

Footnote 7:Neither party has provided a transcript from this court date, however, the Court has reviewed the notes of the Hon. Laura Ward from that court date that appear both in the court file and as appended to the People's response.